**Danny J. McCLURE, Appellant,**

v.

**JPMORGAN CHASE BANK as Independent Executor of the Estate of Vivienne Redlich, Deceased, Appellee.**

**No. 2–03–203–CV.**

Court of Appeals of Texas, Fort Worth.

Sept. 23, 2004.

Brian G. Dicus, Richard G. Mills, Dallas, for Appellant.

Jackson Walker, L.L.P., M. Keith Branyon, Daniel, R. McCabe, Fort Worth, for Appellee.

PANEL A: CAYCE, C.J.; GARDNER and McCOY, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant Danny J. McClure appeals the trial court's partial grant of summary judgment on the motion of Appellee JPMorgan Chase Bank as Independent Executor of the Estate of Vivienne Redlich, Deceased. In two issues, McClure contends that the trial court erred (1) in granting JPMorgan's motion for summary judgment as there was sufficient summary judgment evidence to raise genuine issues of material fact and (2) in finding that Vivienne Redlich's revocation of the "Vivienne Redlich Trust" ("Trust") was not delivered. We will affirm.

### I. Factual Background and Procedural History

Vivienne Redlich executed a document on June 5, 1997 entitled "The Vivienne

Redlich Trust" that named as trustee Texas Commerce Bank, now known as JPMorgan Chase Bank. Redlich amended her trust document on August 9, 2000, and on the same date, she also executed her last will and testament, leaving the majority of her probate estate to JPMorgan as Trustee of the Trust. Article 3.01 of the Trust provides for the amendment, modification, and revocation of the trust as follows:

> This trust is revocable during Settlor's lifetime. The Settlor shall have the power and right to amend, modify or revoke, in whole or in part, this Agreement or any terms or provisions thereof *by notice in writing delivered to the Trustee.* Such amendment, modification or revocation shall be effective immediately upon delivery to the Trustee, except that changes with respect to the Trustee's duties, liabilities or compensation shall not be effective without the Trustee's written consent. The Settlor shall further have the power and right to require and direct the Trustee to distribute to Settlor or to any other person designated by Settlor any property or properties held by the Trustee hereunder; provided, however, Settlor shall have the unlimited right during Settlor's lifetime to withdraw all or any part of the trust corpus. After the death of the Settlor, this trust shall be irrevocable and not subject to amendment or change by any person whomsoever. [Emphasis supplied.]

Redlich's August 9, 2000 will incorporates by reference the Vivienne Redlich Trust.

Redlich died on December 15, 2001. On January 24, 2002, JPMorgan filed an "Application for Probate of Will and Issuance of Letters Testamentary." JPMorgan filed Redlich's self-proved will dated August 9, 2000. JPMorgan also filed a document dated November 12, 2001, which appears to be a handwritten will signed by Redlich. JPMorgan alleged that the effect of the November 12, 2001 document on Redlich's will "is unknown at this time."

On February 14, 2002, Appellant Danny McClure filed his "Opposition and Contest to Probate of Purported Will, Counter–Application for Probate of Holographic Will, and Original Petition for Declaratory Judgment." McClure describes himself as a "close personal family friend" of Redlich. McClure asserted that Redlich left a holographic will dated November 12, 2001, which "specifically revoke[s] a Trust which she had created prior to the time of the execution of the holographic Will." Redlich's purported holographic will states that, as a result of the revocation, "all property claimed to be held by the Trust should pass through Decedent's holographic Will and pass as part of her residual estate," with McClure named as the beneficiary.

Both JPMorgan and McClure sought a declaratory judgment regarding the status of the Trust. After both sides had conducted discovery, JPMorgan filed both a traditional and a no-evidence motion for summary judgment on August 7, 2002 and asked the trial court to declare that the Trust was not revoked by the November 12, 2001 document offered by McClure. McClure filed a response, and JPMorgan filed a motion to strike McClure's affidavits and a reply to the response.

The trial court conducted a hearing and denied the motion for summary judgment on October 16, 2002. Thereafter, the parties conducted further discovery and prepared for trial. However, by an order signed and dated June 16, 2003, the trial court granted JPMorgan's motion for summary judgment without stating its grounds. In a letter dated June 16, 2003, the trial court informed the parties that it was granting the summary judgment on the following bases:

A. The November 12, 2001 document fails to effectively revoke the Vivienne Redlich Trust. After sufficient time for discovery, no evidence has been adduced as to any delivery of the purported revocation during the lifetime of the Decedent pursuant to the terms of § 3.01 of the trust.

B. The November 12, 2001 document evinces no intent to revoke the August 9, 2000 document, but recites that it is merely to "prevail over all previously signed testamentary papers and my prior agreements."

C. The November 12, 2001 document is not ambiguous as to whether it supplements or supplants all provisions of the August 9, 2000 document. It provides that the document will "prevail over all previously signed testamentary papers and my prior agreements." The effect of the document is to supplant Section II of the August 9, 2000 document only. The provisions of Articles I and III are unaffected.

McClure then moved for partial nonsuit to make the partial summary judgment a final, appealable order. In pertinent part, McClure stated,

Contestant no longer desires to prosecute his claim for probate of a holographic will, a true and correct copy of which is attached to Contestant's Application. Contestant further no longer desires to pursue his opposition to the probate of the will offered by JPMorgan Chase Bank. This non-suit is not meant to address those claims of Contestant previously dealt with by the Court in its Order Granting Partial Summary Judgment.

Subsequently, the court signed an order granting McClure's motion for nonsuit without prejudice. On June 17, 2003, after hearing evidence and reviewing Redlich's August 9, 2000 will, the trial court signed an order admitting the August 9, 2000 will to probate and authorizing letters testamentary.

## II. Effect of Nonsuit

 Before turning to the substance of McClure's issues, we will address JPMorgan's contention that we must dismiss this appeal on the basis that McClure's nonsuit of both his claim for probate of the holographic document and his opposition to the probate of the will offered by JPMorgan render this appeal moot. *See Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 92 (Tex.2003) (concluding constitutional questions were not moot before addressing merits of the petitioner's claims), *cert. denied*, 540 U.S. 1177, 124 S.Ct. 1404, 158 L.Ed.2d 77 (2004); *Bd. of Adjustment v. Wende*, 92 S.W.3d 424, 426 (Tex.2002) ("Before addressing the merits of this case, we must first determine whether the controversy has become moot."). Under the classic mootness doctrine, a justiciable controversy is definite and concrete and must impact the legal relations of parties having adverse legal interests. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). Our jurisdiction is restricted to such actual controversies. *Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988). A controversy must exist between the parties at every stage of the legal proceeding, including the appeal. *Wende*, 92 S.W.3d at 427. Thus, when an appeal is moot, we must set aside the judgment and dismiss the cause. *City of Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 371 (Tex.App.-Fort Worth 2001, no pet.).

Texas Rule of Civil Procedure 162 permits a plaintiff to voluntarily dismiss or nonsuit a case "[a]t any time before the

plaintiff has introduced all of his evidence other than rebuttal evidence." Tex.R. Civ. P. 162; *Pace Concerts, Ltd. v. Resendez*, 72 S.W.3d 700, 702 (Tex.App.-San Antonio 2002, pet. denied). Courts in Texas have held that "a plaintiff has a right to take a nonsuit after the defendant files a motion for summary judgment, up to the time the court announces a summary judgment." *Leon Springs Gas Co. v. Rest. Equip. Leasing Co.*, 961 S.W.2d 574, 577 (Tex. App.-San Antonio 1997, no pet.); *see Pace Concerts*, 72 S.W.3d at 702; *Taliaferro v. Smith*, 804 S.W.2d 548, 550 (Tex.App.-Houston [14th Dist.] 1991, no writ); *Extended Servs. Program, Inc. v. First Extended Serv. Corp.*, 601 S.W.2d 469, 471 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.).

■ And while a nonsuit may have the effect of vitiating a trial court's earlier interlocutory orders, a nonsuit does not vitiate a trial court's previously-made decision on the merits, such as a summary judgment. *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854–55 (Tex.1995). In *Hyundai*, the court held that "[a] partial summary judgment is a decision on the merits[, which] becomes final upon the disposition of the other issues of the case." *Id.* at 855; *see also Newco Drilling Co. v. Weyand*, 960 S.W.2d 654, 656 (Tex.1998) (holding court of appeals erred in failing to review the merits of the trial court's grant of a partial summary judgment after the plaintiffs allowed their case to be dismissed for want of prosecution).

Here, the trial court granted partial summary judgment on JPMorgan's request for the trial court to declare that the November 12, 2001 document failed to revoke the Trust. When McClure nonsuited his remaining claims, the nonsuit did not vitiate the trial court's grant of the partial summary judgment, but rather made the partial summary judgment a final, appeal-

able order. *See In re Bennett*, 960 S.W.2d 35, 38 (Tex.1997) (orig.proceeding), *cert. denied*, 525 U.S. 823, 119 S.Ct. 66, 142 L.Ed.2d 52 (1998); *Hyundai*, 892 S.W.2d at 855; *Le v. Kilpatrick*, 112 S.W.3d 631, 633 (Tex.App.-Tyler 2003, no pet.). Because McClure's issues on appeal concern only the trial court's grant of the partial summary judgment, his issues on appeal are not moot. *See Bennett*, 960 S.W.2d at 38; *Hyundai*, 892 S.W.2d at 855; *Le*, 112 S.W.3d at 633. We therefore address the merits of the issues McClure raises on appeal.

## III. Summary Judgment

McClure challenges the trial court's grant of partial summary judgment in two issues. First, McClure generally argues that the trial court erred in granting JPMorgan's motion for summary judgment because he presented sufficient summary judgment evidence to raise genuine issues of material fact. Second, McClure specifically challenges the trial court's finding that he presented no evidence of the delivery of the document that he argues revoked the Trust. Although JPMorgan filed both traditional and no-evidence motions for summary judgment, we need only analyze JPMorgan's traditional motion for summary judgment. *See* Tex.R. Civ. P. 166a(c).

### A. Standard of Review Under Rule 166a(c)

In reviewing an appeal from a traditional motion for summary judgment, the issue is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Id.; S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the

movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *S.W. Elec. Power Co.,* 73 S.W.3d at 215; *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Rhone–Poulenc,* 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin,* 589 S.W.2d at 678.

### B. Analysis

■ On appeal, McClure "asks the Court to reverse the Trial Court and find that the Trial Court erred in granting the Motion for Summary Judgment as to revocation of the Trust." As stated above, the Trust allowed Redlich during her lifetime to amend, modify, or revoke her trust *"by notice in writing delivered to the Trustee."* [Emphasis supplied.] As both parties recognize in their briefs, the crux of this appeal is whether the November 12, 2001 document was delivered to the trustee JPMorgan before Redlich's death, in accordance with the terms of the Trust. JPMorgan argues that it established as a matter of law that the November 12, 2001 document did not revoke the Trust because it was never delivered to JPMorgan before Redlich's death.

In *Runyan v. Mullins,* we held that "when the terms of a trust set out a specific method or manner in which to amend the trust, the Texas Trust Code indicates that those terms are controlling and must be followed." 864 S.W.2d 785, 789 (Tex. App.-Fort Worth 1993, writ denied) (citing TEX. PROP.CODE ANN. § 111.002(a) (Vernon 1995)). Further, we stated that "if a settlor of a trust agreement reserves the power to modify the trust only in a specific manner, the trust can only be modified in that manner." *Id.* at 790; *see also* GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 993 (rev.2d ed. 1983) ("The ways in which the power may be used to alter or modify the trust will be determined by the language of the instrument, which may provide for alterations by described methods only...."); Thomas M. Featherston, Jr., Note, *The Revocation of an Inter Vivos Trust By a Will,* 24 BAYLOR L.REV. 274, 281 (1972) (stating that if a trust instrument requires a "particular mode of revocation that should have been followed[,] ... that method *must* have been complied with").

JPMorgan, as the applicant for probate of Redlich's August 9, 2000 will, which incorporated the Trust by reference, bore the burden of establishing that the Trust was not revoked by the November 12, 2001 document. *See* TEX. PROB.CODE ANN. § 88(b)(3) (Vernon 2003). As part of its traditional motion for summary judgment, JPMorgan attached the Trust, the August 9, 2000 amendment to the Trust, and the affidavit of Larry Bothe, who is employed as Senior Vice–President of JPMorgan and, as such, served as the custodian of JPMorgan's books and records. According to Bothe's affidavit, JPMorgan "has

served continuously as Trustee of the Trust since it was created on June 5, 1997." Bothe referred to the terms of the Trust governing the particular manner of revocation during Redlich's lifetime and the provision making the trust irrevocable once she died.

Bothe's affidavit stated that Redlich amended her trust once—on August 9, 2000—before her death in December 2001. Such amendment was delivered to JPMorgan on August 9, 2000. Bothe further averred that, aside from the August 9, 2000 amendment, "no other amendment, modification or revocation was made to the Trust or any terms or provisions stated therein[, and] neither Redlich nor anybody on her behalf delivered in writing any amendment, modification or revocation of either all or any part of the Trust prior to the death of Redlich."

In his affidavit, Bothe stated that he "made a diligent search and review of all of the records regarding Redlich and the Trust." Bothe then stated,

> There is no memorandum, report, record, or data compilation, in any form, that was delivered to JPMORGAN prior to the death of Redlich that contains any statement or reference regarding a desire or intent by Redlich to revoke, in whole or in part, the Trust. This is the kind of and [sic] it would be the regular practice of JPMORGAN to keep, maintain and preserve such a record. However, no such record exists.

Bothe's affidavit then averred that he is familiar with McClure's claims in this case but that "[t]he document attached to [McClure's Opposition and Contest to Probate of Purported Will] and alleged to be a holographic will was never delivered to JPMORGAN prior to the death of Redlich." Bothe's affidavit continued, "Neither I nor JPMORGAN ever saw the alleged 'holographic will' until after the death of Redlich."

While McClure offered summary judgment evidence in response to JPMorgan's motion for summary judgment, upon our review of the proffered evidence, assuming solely for the sake of argument that the November 12, 2001 document would have revoked the Trust, we find no summary judgment evidence raising a genuine issue of material fact that Redlich, before her death, delivered written notice of such revocation to JPMorgan as was required under the terms of the Trust. McClure points to the deposition testimony of Bothe, in which Bothe testified that he first found the November 12, 2001 document in a folder in a lockbox in Redlich's apartment after she had died. Bothe testified that the November 12, 2001 document was not affixed to her will but that the bank would honor it "according to the determination of the Court."

McClure proffered an affidavit signed by Elizabeth Pickering, in which she averred that she had heard Redlich state "that she had decided to revoke her Trust and change her Will to redirect the proceeds to DANNY J. McCLURE." Pickering's affidavit also stated that "[Redlich] had made the changes necessary to make DANNY J. McCLURE the beneficiary of all of her property, including the property that had been in the VIVIENNE REDLICH Trust." Further, Pickering averred, "During her lifetime, VIVIENNE REDLICH also told me that Larry Bothe at J.P. Morgan Chase Bank knew about the changes she had made to her Trust."

McClure also presented the affidavit of Kimberly McClure, who averred that Vivienne Redlich told her, in the presence of Pickering and her husband Danny McClure, that she had revoked the Trust and changed her will to make Danny McClure the sole beneficiary. Kimberly

McClure's affidavit also stated that Redlich told her that she had told Larry Bothe, and perhaps others at JPMorgan, of the changes.

JPMorgan argues that we should not consider any of the affidavits proffered by McClure because they contain inadmissible hearsay. At best, Pickering's and Kimberly McClure's affidavits suggest that JPMorgan was merely aware of the purported revocation, but they do not show that it received *written* notification of the revocation. Thus, even considering Pickering's and Kimberly McClure's affidavits, we conclude that neither raises a fact issue that Redlich delivered written notice of the revocation of the Trust to JPMorgan before she died, which was required by the express terms of the Trust.

McClure, himself, also signed an affidavit and stated,

> Based on my own personal observations and knowledge, whenever VIVIENNE REDLICH had anything of importance to deliver to the bank or place in her safe deposit box, someone from the bank either came to pick it up or they came to pick up VIVIENNE REDLICH and take her to the bank to handle the matter or make a delivery. This was common procedure for LARRY BOTHE or someone else from J.P. Morgan Chase Bank to handle the exchange of documents or items this way.

McClure's affidavit does not aver that this "common procedure" was used to deliver written notice of the November 12, 2001 document to JPMorgan before Redlich died. Thus, McClure's affidavit, along with all of the other summary judgment evidence proffered by McClure, fails to show that Redlich delivered the November 12, 2001 document in the manner required by the Trust.

On appeal, McClure cites several cases from other jurisdictions and one from Texas, arguing that delivery may be either actual or constructive and that the question of delivery raises a fact question to be determined by a finder of fact. *See, e.g., Awad Tex. Enters., Inc. v. Homart Dev. Co.,* 589 S.W.2d 817, 819–20 (Tex.Civ.App.-Dallas 1979, no writ) (stating that question of delivery of a contract is "a mixed one of law and fact to be determined by the trier of fact"). However, McClure makes no attempt in either his brief or his reply brief to distinguish or otherwise address *Runyan.*

*Runyan* controls this case, so section 3.01 of the Trust provided the particular manner for revoking the trust by a subsequent written document. 864 S.W.2d at 789–90. Analyzing this case under the standard applicable to a traditional motion for summary judgment, McClure's evidence wholly fails to show delivery in conformity with the terms of the Trust. Further, McClure's summary judgment evidence does not controvert Bothe's affidavit, in which he stated that the November 12, 2001 holographic will was never delivered to JPMorgan and that neither he nor anyone from JPMorgan ever saw the November 12, 2001 document before Redlich's death. *See Great Am.,* 391 S.W.2d at 47.

We conclude that no genuine issue of material fact exists as to the purported delivery of the alleged revocation of the Trust and that JPMorgan is entitled to judgment as a matter of law on that issue. *See* Tex.R. Civ. P. 166a(c); *S.W. Elec. Power Co.,* 73 S.W.3d at 215; *Clear Creek Basin,* 589 S.W.2d at 678; *see also Runyan,* 864 S.W.2d at 789. Consequently, the trial court did not err in granting JPMorgan's motion for partial summary judgment. We overrule McClure's two issues.

## IV. Conclusion

Having overruled McClure's two issues, we affirm the trial court's judgment.