COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-037-CV

 

 

MARJORIE BRUMFIELD                                                         APPELLANT

 

                                                   V.

 

STEPHEN D. RUYLE, M.D.                                                      APPELLEES

AND
JORGE VALENCIA, M.D.

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








In two issues, Appellant
Majorie Brumfield asserts that the trial court erred by (1) dismissing
Brumfield=s medical
malpractice lawsuit against Appellee Jorge Valencia, M.D. (ADr. Valencia@) for
failure to furnish an expert report and (2) granting Appellee Stephen D. Ruyle,
M.D.=s (ADr. Ruyle@) motion for summary judgment. 
We affirm the trial court=s judgment dismissing Dr. Valencia from the lawsuit, but we reverse
the summary judgment for Dr. Ruyle and remand to the trial court.

II.  Factual and Procedural Background

This is the case of the loose
screw. 

On August 28, 2003, Brumfield
filed a health care liability claim against Dr. Ruyle, an orthopedic surgeon
practicing in Wichita Falls.  In her
original petition, Brumfield alleged that Dr. Ruyle provided negligent treatment
and follow-up care for her fractured forearm from September 3, 2002 through May
21, 2003, and that such medical negligence proximately caused severe and
disabling injuries to her arm.  Dr. Ruyle
generally denied Brumfield=s allegations and subsequently asserted that Anew, independent, and intervening causes not reasonably foreseeable@ were the proximate and sole cause of her injuries.








This suit is governed by former
article 4590i of the Medical Liability and Insurance Improvement Act of
Texas (hereinafter Aformer article 4590i@).[1]   Pursuant to the statutory requirements of
former article 4590i, section 13.01(d), the deadline for furnishing Dr. Ruyle
with an expert report and curriculum vitae demonstrating the prima facie merits
of Brumfield=s health
care liability claim was February 24, 2004, 180 days after she filed suit.  On January 13, 2004, she timely filed the AReport and Curriculum Vitae of Expert, Roby Mize, M.D.@ (ADr. Mize@).  According to his curriculum
vitae, Dr. Mize was a board-certified orthopedic surgeon with staff privileges
at Presbyterian Medical Center and Parkland Memorial Hospital in Dallas and was
a member of the faculty of the Department of Orthopedic Surgery at the
University of Texas Southwestern Medical Center.








Throughout his report, Dr.
Mize was critical of the medical and surgical care that Dr. Ruyle provided to
Brumfield upon her presentation to the emergency room of Kell West Regional
Hospital suffering from a fractured left forearm, and thereafter.[2]  The surgery subsequently performed by Dr.
Mize included a Acompression
AO screw placement in the fracture.@  After providing a detailed
summary of Brumfield=s course of
treatment and setting forth the standard of care applicable to an orthopedic
surgeon treating a patient with her symptoms, Dr. Mize discussed the manner in
which he believed that Dr. Ruyle breached the standard of care, including Dr.
Ruyle=s failure to properly diagnose the older nature of Brumfield=s fracture from the outset, failure to properly repair the fracture
during the initial surgery, and failure to timely and properly assess and treat
the repaired fracture for the known post operative complication of infection.  Dr. Mize further opined that such negligence
proximately caused Brumfield to undergo multiple additional surgeries to
correct the failed repair.

On March 1, 2005, Dr. Ruyle
filed a motion for leave to designate Dr. Valencia as a third party responsible
for the injuries made the basis of Brumfield=s health care liability claim.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 33.004(a) (Vernon 1997) (providing that a defendant may file a motion
for leave to designate a person as a responsible third party).  Dr. Ruyle argued that Dr. Valencia
negligently prescribed and administered steroids to Brumfield after her initial
surgery without communicating this to Dr. Ruyle, thereby inhibiting the post
operative healing process and encouraging infection to the point that the
repair of the fracture failed.








In support of his argument,
Dr. Ruyle referred to Dr. Mize=s deposition testimony that, if Dr. Valencia had treated Brumfield
with Asome type of steroid medication@ post operatively, such treatment could affect the healing of her
fracture repair because steroids inhibit the normal healing process.  Dr. Ruyle also referred to the expert report
of another orthopedic surgeon, one of his testifying experts, Lyn D. Ward, M.D.
(ADr. Ward@).  Dr. Ward opined that a steroid injection
around the site of the fracture repair would inhibit the natural process of
healing, contribute to non-union, and predispose the patient to infection; with
Brumfield=s other
problems of pneumonia, smoking, and obesity, the steriod injection would Aoverwhelm@ the attempt
to heal the fracture.  Dr. Ward concluded,
AConfounding variables such as treatments to the elbow outside the care
of Dr. Ruyle lay the stern foundation for reasonable doubt in assigning any
negligence on his part.@  Dr. Ruyle did not, however, attach the
transcript of Dr. Mize=s deposition
or the report of Dr. Ward in support of his motion.

The motion for leave to add
Dr. Valencia as a responsible third party did not attribute any opinions to
either Dr. Mize or Dr. Ward that (1) established the standard of care
applicable to a family and general practitioner such as Dr. Valencia attempting
to address a post operative patient suffering from both pneumonia and bursitis
in the left elbow, as distinct and apart from the left forearm fracture repair,
(2) described how the treatment provided by Dr. Valencia breached any such
standard of care, or (3) provided any explanation of the causal relationship
between any such breach and the injuries made the basis of Brumfield=s health care liability claim.

On March 16, 2005, Brumfield
objected to Dr. Ruyle=s motion for
leave, complaining that Dr. Ruyle had failed to file a proper expert report
pursuant to former article 4590i, section 13.01(d).  Brumfield further argued,








Neither
the deposition testimony of the Plaintiff=s expert, Dr. Roby Mize, nor
the medical report of the Defendant=s expert, Dr. Lyn Ward, make
any allegation whatsoever that Jorge Valencia, M.D., failed to follow the
appropriate standard of care as would a physician of ordinary prudence under
the same or similar circumstances or that such failure was a proximate cause of
damages to the Plaintiff.  While the
deposition of Dr. Roby Mize and the report of Dr. Lyn Ward may imply the
conduct of Dr. Jorge Valencia was a cause of damage to the Plaintiff, without
an opinion that his conduct was, in fact, a violation of the appropriate
standard of care, Dr. Valencia cannot be found to be a responsible third party.

 

Thereafter, on March 31,
2005, Dr. Ruyle filed his first amended motion to designate Dr. Valencia as a
responsible third party, attaching Dr. Ward=s curriculum vitae, his original expert report, and his amended expert
report dated March 24, 2005.  The amended
expert report added the following conclusion concerning Dr. Valencia:

In
reference to the definition in the Texas Pattern Jury Charge, the treatments
performed by Dr. Valencia . . . failed to follow the appropriate standards of
care as would a physician of ordinary prudence under the same or similar
circumstances and at [sic] such failure was a proximate cause of damages to the
plaintiff.  Dr. Valencia in failing to
notify Dr. Ruyle as noted above, failed to follow the appropriate standards of
care in this or a similar circumstances which was a direct proximate cause of
damages to Mrs. Brumfield. 

 








According to Dr. Valencia, like the original
report, this addition to the amended report contained no opinions establishing
the standard of care applicable to a family and general practitioner such as
Dr. Valencia when presented with a patient such as Brumfield suffering from
pneumonia and bursitis in the left elbow. 
Nor did the remainder describe how the treatment provided by Dr.
Valencia breached any such standard of care or provided any explanation of how
any such breach proximately caused the injuries that were the basis of
Brumfield=s
claim.  However, Brumfield thereafter
withdrew her objection to designating Dr. Valencia as a responsible third
party, and the trial court granted the amended motion by written order on April
21, 2005.

On April 25, 2005, Brumfiled
filed her third amended petition in which she directly asserted a health care
liability claim against Dr. Valencia as follows:

As a
licensed physician, he provided medical care to the fractured left forearm of
the Plaintiff during the same period of time care was provided to the Plaintiff
by Defendant Ruyle.  This care was
provided to the Plaintiff without coordination with Defendant Ruyle.  Plaintiff alleges the treatment provided by
the Defendants were negligently provided and was a proximate cause of her
injuries and damages.

 

Her allegation made no specific reference to any
particular treatment provided by Dr. Valencia, including his prescription and
administration of any form of steroid treatment for her pneumonia or
bursitis.  Dr. Valencia generally denied
her allegations, and Dr. Ruyle responded that Dr. Valencia=s negligence was a new and independent cause that would preclude any
finding of causation against Dr. Ruyle.








The deadline for furnishing
Dr. Valencia with an expert report and curriculum vitae demonstrating the prima
facie merits of Brumfield=s health
care liability claim against him was October 22, 2005, 180 days after she added
him as a third-party defendant. 
Brumfield did not furnish counsel for Dr. Valencia with an expert report
or curriculum vitae from a qualified physician by this deadline.  Nor did she furnish an amended expert report
from Dr. Mize or otherwise indicate that she intended his deposition testimony
to fulfill her statutory obligation to furnish an expert report and curriculum
vitae.  Finally, at no time before the
deadline did Brumfield furnish counsel for Dr. Valencia with the original
report, supplemental report, or curriculum vitae of Dr. Ward or otherwise
indicate that she intended to rely upon his report and curriculum vitae as fulfilling
her statutory obligation.  

On November 29, 2005, Dr.
Valencia filed a motion to dismiss Brumfield=s health care liability claim against him based on her failure to
furnish a timely expert report in compliance with former article 4590i, section
13.01(d). On December 21, 2005, the trial court conducted a hearing on the
motion.  On the day of the hearing,
Brumfield filed her response to the motion, arguing that she had complied with
her statutory obligations because Dr. Valencia had already received the expert
report and curriculum vitae of Dr. Ward, upon which she relied in adding Dr.
Valencia as a defendant in her third amended petition. This was the first time
that Brumfield indicated in any manner that she intended to rely upon any
expert report other than the original report authored by Dr. Mize.  








Her response referenced Dr.
Ward=s original report and curriculum vitae, attached as exhibits B and C
to Dr. Ruyle=s amended
motion for leave to designate Dr. Valencia as a responsible third party, but
not Dr. Ward=s
supplemental report, attached thereto as exhibit D, which added the opinions
concerning Dr. Valencia=s
professional responsibility.  Dr.
Valencia asserts on appeal that Brumfield=s response urged her reliance upon a report to which she herself had
objected as failing to establish the standard of care, breach, and causation
elements of any potential health care liability claim against Dr. Valencia.

Brumfield further argued at
the hearing that Dr. Valencia had actual notice of the merits of her claim
because Dr. Ruyle=s counsel
provided Dr. Valencia=s counsel
with not only Dr. Ward=s original
report but also his deposition transcript. 
Dr. Valencia asserted that Brumfield=s response, other than stating that Dr. Ward was critical of the care
that Dr. Valencia provided, failed to detail the manner in which Dr. Ward=s testimony established the prima facie elements of her health care
liability claim against him. 








At the close of the hearing,
the trial court ruled from the bench that former article 4590i, section
13.01(d) placed an affirmative duty upon a health care liability claimant to
furnish an expert report and curriculum vitae to counsel for each named
defendant and that it did not permit Brumfield to rely upon the actions of
counsel for Dr. Ruyle or upon any other actual notice received by Dr. Valencia
to meet her statutory obligation. 
Accordingly, the trial court granted Dr. Valencia=s motion to dismiss with prejudice and entered an order to that effect
on December 22, 2005.  Two weeks later,
the trial court granted Dr. Ruyle=s motion for summary judgment that he had filed on November 4, 2005,
without specifying the reason therefor. 
The court ordered that Brumfield take nothing against Dr. Ruyle.  Brumfield now appeals. 

III.  Dismissal of Dr. Valencia

In her first issue, Brumfield
asserts error on the part of the trial court in granting Dr. Valencia=s motion to dismiss for failure to furnish an expert report to
him.  Former article 4590i, section
13.01(d), applicable at the time, stated, 

(d)
not later than the later of the 180th day after the date on which a health care
liability claim is filed . . . the claimant shall, for each physician or
health care provider against whom a claim is asserted:

 

(1) furnish
to counsel for each physician or healthcare provider one or more expert
reports, with a curriculum vitae of each expert listed in the report
. . . .

 








Act of May 1, 1995, 74th Leg., R.S., ch. 140, ' 1, sec. 13.01(d), 1995 Tex. Gen. Laws 985, 986 (repealed 2003)
(emphasis supplied).  The result of
failing to comply with the statute is dismissal, with the abuse of discretion
standard utilized to review the dismissal.  See Am. Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001).  Brumfield contends that she substantially
complied with the requirements of former article 4590i because (1) Dr. Ruyle=s AFirst
Amended Motion to Designate Valencia as a Responsible Third Party@ attached the report and curriculum vitae of Dr. Ward and, hence, Dr.
Valencia was Aon
constructive notice of the district court=s file,@ and (2) Dr.
Ruyle=s attorney forwarded a copy of this motion to Dr. Valencia=s attorney along with a copy of Dr. Ward=s deposition.  In short,
Brumfield argues that because Dr. Valencia possessed a copy of Dr. Ward=s report and deposition, the statutory requirements were sufficiently
fulfilled.  

There appears to be no case
law discussing this situation.  Brumfield
acknowledges this but points to Butler v. Taylor, 981 S.W.2d 742 (Tex.
App.CHouston [1st Dist.] 1998, no pet.), wherein our sister court found
substantial compliance with the notice requirement of former article 4590i,
section 4.01(a) when the plaintiff sent the notice of claim to the defendant by
express mail, as opposed to certified mail. 
See Act of May 30, 1977, 65th Leg., R.S., ch. 817, ' 4.01(a), 1977 Tex. Gen. Laws 2039, 2047-48 (repealed 2003).  Of course, in that case, the claimant did
furnish the notice to the health care provider.  We find that case to be distinguishable on
its face.








Without deciding whether the
report itself meets the requirements of former article 4590i, since the statute
plainly says that the claimant shall furnish an expert=s report, we hold that under the circumstances of this case, Brumfield
did not satisfy the statute=s requirements.  Because
Brumfield herself did not directly furnish a copy of the report to Dr.
Valencia, did not cause a copy of the report to be furnished to him, and did
not inform him until the day of the hearing on the motion to dismiss that she
intended in some way to rely on anything other than her own expert=s report, we do not see how this possibly fulfills the requirement of
the wording of the statute.  Without
deciding whether a deposition constitutes a report,[3]
we hold that the same analysis applies to Dr. Ward=s deposition, so neither does the deposition satisfy the statute=s requirements.  We overrule
Brumfield=s first
issue.

IV.  Grant of Dr. Ruyle=s Motion for Summary Judgment

In her second issue,
Brumfield asserts error on the part of the trial court in granting Dr. Ruyle=s motion for summary judgment.

A.  Standard of Review








A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004); see Tex. R.
App. P. 166a(b), (c).  Once the
defendant produces sufficient evidence to establish the right to summary
judgment, the burden shifts to the plaintiff to come forward with competent
controverting evidence raising a genuine issue of material fact with regard to
the element challenged by the defendant. 
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995).  A non-movant=s summary judgment response does not have to establish a fact as a
matter of law.  Rather, the non-movant
must raise an issue of fact material to the outcome of the case.  See Tex.
R. Civ. P. 166a(c); Siegler, 899 S.W.2d at 197. 

In deciding whether there is
a disputed issue of material fact precluding summary judgment, the court takes
as true all evidence favorable to the non-movant.  Limestone Prods. Distribution, Inc. v.
McNamara, 71 S.W.3d 308, 311 (Tex. 2002); McClure v. JPMorgan Chase Bank,
147 S.W.3d 648, 653 (Tex. App.CFort Worth 2004, pet. denied). 
Evidence and reasonable inferences are viewed in the light most
favorable to the non-movant, Brumfield, and the court must indulge every
reasonable inference and resolve all doubts in favor of Brumfield.  See Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 549 (Tex. 1985); McClure, 147 S.W.3d at 653.

B.  Summary Judgment in Medical Malpractice
Causes of Action








A plaintiff in a medical
malpractice action is required to establish the following elements: (1) a duty
owed by the health care provider to act according to the applicable standard(s)
of care; (2) a breach of that duty; (3) an injury; and (4) a causal connection
between the breach of the standard and the injury.  Park Place Hosp. v. Estate of Milo,
909 S.W.2d 508, 511 (Tex. 1995); Duff v. Yelin, 751 S.W.2d 175, 176
(Tex. 1988).  With respect to the
causation element, the plaintiff must show evidence that to a reasonable degree
of medical probability, the injury claimed was proximately caused by the
negligence of the defendant.  Park
Place Hosp., 909 S.W.2d at 511; Lenger v. Physician=s Gen. Hosp. Inc., 455 S.W.2d
703, 706 (Tex. 1970); Marvelli v. Alston, 100 S.W.3d 460, 470 (Tex. App.CFort Worth 2003, pet. denied). 
The proximate cause element consists of both foreseeability and
cause-in-fact.  Cause-in-fact is established
when the plaintiff shows by a preponderance of the evidence that the negligent
act or omission is a substantial factor in bringing about the harm, and without
which the harm would not have occurred.  Park
Place Hosp., 909 S.W.2d at 511; Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 477 (Tex. 1995).

C.  Dr. Ruyle=s Motion for Summary Judgment

Dr. Ruyle moved for a
traditional summary judgment on two grounds: (1) A[a]s a matter of law the plaintiff has failed to prove Stephen D.
Ruyle, M.D. was a proximate cause of plaintiff=s injuries,@ and (2) A[a]s a matter of law the plaintiff has failed to prove Stephen D.
Ruyle, M.D. was a proximate cause of plaintiff=s injuries because Dr. Valencia=s negligence in treating plaintiff with steroids was a new and
independent cause.@

The evidence demonstrated
that the pertinent medical sequence of events was as follows:

1.     On August 30, 2002, Dr. Ruyle performed a fracture repair on
Brumfield=s
left elbow utilizing a single fixation screw.

 

2.     During the course of the operative procedure, Dr. Ruyle had a
great deal of difficulty passing a guide wire across the fracture site and had
to take fracture fragments apart in order to do so.

 








3.     Dr. Ruyle had his first post operative visit with Brumfield on
September 20, 2002, in which he evaluated Brumfield as having had good healing.


 

4.     After two additional post operative visits where healing was
evaluated as good, on January 17, 2003, some four and one-half months after
surgery, Dr. Ruyle first determined that a non-union of the fracture was
developing.  In spite of this fact, he
chose not to re-evaluate Brumfield for an additional two months. 

 

5.     On January 29, 2003, Dr. Valencia aspirated fluid from Brumfield=s
left bursa (not the operative site), and on a second office visit shortly
thereafter, he performed a second aspiration and injection of the bursa with a
steroid. 

 

6.     On February 12, 2003, Dr. Valencia administered steroids to
Brumfield for her continuing chronic obstructive pulmonary disease (ACOPD@).

 

7.     Not until March 21, 2003, did Dr. Ruyle again see Brumfield and
make a formal diagnosis of a non-union as a result of the failure of the
internal fixation device.

 

Brumfield=s expert witness, Dr. Mize, determined that Dr. Ruyle was negligent as
follows:

1.     He failed to establish a correct diagnosis of the fracture prior
to surgery;

 

2.     He failed to properly assess Brumfield=s
injury and did not suspect that it included an old, partially healed fracture
prior to surgery;

 

3.     He failed to establish good indications for surgery upon
Brumfield;

 

4.     He failed to perform careful pre operative planning prior to the
surgery;

 

5.     He failed to perform the proper surgery by augmenting the screw
fixation device with a tension wire band, which would have helped to prevent
subsequent implant failure; and

 

6.     He failed to provide proper follow-up care following his
diagnosis of a non-union and an obvious ongoing failure of the fixation device.

 








Additionally, Dr. Mize opined
that Dr. Ruyle failed to meet the standard of care because he did not (1)
properly assess the continuing complaint of pain by the patient and order
appropriate diagnostic studies to determine the source of pain; (2) follow and
assess the patient at reasonably frequent intervals in the event of known
ongoing complications such as implant failure; and (3) suspect infection as a
possible cause of pain and implant failure and order appropriate diagnostic
studies to confirm or rule out this complication in a timely manner.

Dr. Mize further opined that
as a result of these failures, the single screw used for fixation failed and a
non-union developed.  Because Dr. Ruyle
failed to meet the proper standard of care during post operative management,
and because Dr. Ruyle repeatedly neglected to order appropriate diagnostic
studies to confirm or rule out the presence of infection, Dr. Mize concluded,
valuable time was lost and the infection progressed to a catastrophic stage, requiring
multiple subsequent surgeries.








By contrast, Dr. Ruyle also
presented expert testimony in support of his motion.  Dr. Mize, Brumfield=s own expert, admitted that it is a well-known medical fact that
steroids inhibit the normal healing process, and steroid use can have serious
implications by retarding the healing process of a left elbow surgical
wound.  Further, Dr. Mize admitted that
Dr. Valencia=s use of steroid
treatment for Brumfield could have affected the healing of her left elbow by
suppressing her immune system.  Dr. Mize
testified that he does not use steroids on post-surgical patients because
steroids are known to inhibit the normal healing process.

Additionally, Dr. Ruyle
argues that the summary judgment evidence from Dr. Ward included discussion
supporting the appropriateness of Dr. Ruyle=s care and treatment of Brumfield. 
In this regard, Dr. Ward stated as follows:

In my
opinion, Dr. Ruyle=s
care and treatment before surgery, during surgery and after surgery, of Mrs.
Brumfield met the standards of care and was not [the] proximate cause of her
injuries or outcome.  Dr. Ruyle did not
fail to meet [the] standard of care with regard to Mrs. Brumfield=s
infection treatment.  With reference to
the definitions in the Texas Pattern Jury Charge, the surgical diagnosis and
treatment performed by Dr. Ruyle met standards of care within reasonable
medical probability.  All of my opinions
are based upon reasonable medical probability.

 

Dr. Ward further testified
that the steroids injected in Brumfield>s elbow had a significant role in causing the non-union of the
fracture, as well as her general medical condition.  Dr. Ward stated that A[a] steroid injection around a site of fracture healing will inhibit
the natural process of healing, contribute to non-union, and predispose the
patient to infection.@  Dr. Ward also testified that Ano orthopedist would@ inject steroids around hardware, and he mentions support for this
proposition in medical literature.








Dr. Valencia testified that
he knew Dr. Ruyle had operated on Brumfield=s elbow/forearm and had inserted metal into the elbow.  It is undisputed that in December 2002, Dr.
Valencia drained the bursa in the elbow and injected a cortisone, or steroid,
solution into the area.  He admitted that
steroids are known to delay healing in general. 
He further agreed with Dr. Ward that A[a] steroid injection around a site of fracture healing will inhibit
the natural process of healing, contribute to non-union, and predispose the
patient to infection.@  Dr. Valencia further admitted that he did not
contact Dr. Ruyle prior to or immediately following the steroid injection to
notify him that the injection had been made, and that he should have done so.  When asked why he did not share that
information with Dr. Ruyle, Dr. Valencia testified that Athe only thing that I can tell you is, it would have been better.  I--I shouldn=t assume the care of her elbow on my own.@  Dr. Valencia further admitted
that he administered steroids to Brumfield again in February 2003 for treatment
of her COPD and that he again failed to advise Dr. Ruyle of this treatment in
spite of his knowledge that steroids inhibit the healing process.

Dr. Valencia testified that
he was not critical in any way of the medical care and treatment that Dr. Ruyle
provided to Brumfield.  Dr. Ward also did
not have any criticisms of the medical care provided by Dr. Ruyle to Brumfield,
and he asserted that Dr. Ruyle did not proximately cause Brumfield>s injury.

D.  Proximate Cause

As set forth in the Pattern
Jury Charge, Aproximate
cause@ and Anew and
independent cause@ are defined
as follows: 








Proximate
cause, means that cause which, in a natural and continuous sequence, unbroken
by any new and independent cause, produces an event, and without which cause
such event would not have occurred.  In
order to be a proximate cause, the act or omission complained of must be such
that a physician exercising ordinary care would have foreseen that the event,
might reasonably result therefrom.  There
may be more than one proximate cause of an event.

 

New
and independent cause means the act or omission of a separate and independent
agency, not reasonably foreseeable by a physician exercising ordinary care,
that destroys the causal connection, if any, between the act or omission
inquired about and the occurrence in question and thereby becomes the immediate
cause of such occurrence.

 

2 Comm. on
Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges PJC
50.4 (2006).

The causation and new and
independent cause issues were addressed as follows:

1.     Dr. Mize, while testifying that steroids may inhibit healing,
also clearly stated that they would not stop healing.  Specifically, Dr. Mize stated, AI
think it could inhibit it.  I don=t
think it could completely prevent it.@

 

2.     Dr. Mize stated that steroid use would not cause the fixation
device to back out and contribute to a non-union, which was one of the injuries
Brumfield claimed to have suffered as a result of Dr. Ruyle=s
improper pre operative planning.

 

3.     While Dr. Valencia acknowledged that steroids are known to delay
healing in general, he would not expect a steroid injection to delay healing of
an operative fracture that was three months old and outwardly appeared to be
healing at the time that he injected Brumfield>s
bursa.

 

4.     Dr. Ruyle himself advised Dr. Valencia in March 2003, after
Brumfield>s
non-union had been diagnosed, that such non-union was not the result of any
infectious process that may have been inhibited by the utilization of steroids.

 








5.     The testimony of Dr. Ruyle>s own expert witness, Dr.
Ward, regarding the ultimate cause of Brumfield>s
infection is not clear, direct, and concise.[4]


 

6.     Dr. Ward went on to testify that while the steroids injected
into the bursa may have had a significant role in the non-union of the
Brumfield=s
fracture, other causes included her general medical condition and Aall
things that encircle that.@

 

7.     The testimony of Dr. Ruyle=s other expert witness,
Robert L. McBroom, M.D. (ADr.
McBroom@)
found no fault with the conduct of Dr. Valencia. 

 

8.     Dr. McBroom also testified that while steroids may inhibit healing,
there was no scientific medical evidence in Brumfield>s
medical records that steroids in this instance caused her infection:

 

Q.     And once again, from just the strictly --
the medical records and anything that=s in the records from Ms.
Brumfield, is there anything that proves in fact that her injection,
aspirations or steroid into her bursa was in fact a cause of the infection --
or again, is that something that -- from a general medical standpoint you are
stating?

 

A.     No you=re correct.  There was no
culture evidence which is what is required that there was any infection that at
that time.








E.  Analysis

This is a classic example of Abattling experts.@  As detailed above, both sides
presented experts who gave conflicting assessments regarding the cause of
Brumfield=s
maladies.  For example, Dr. Ward
testified that Dr. Ruyle=s care and
treatment of Brumfield before, during, and after surgery met the standard of
care and was not the proximate cause of her injuries.  Moreover, Dr. Ward further testified that the
steroids injected in Brumfield=s elbow had a significant role in causing the non-union of the
fracture, as well as her general medical condition.  Conversely, Brumfield=s expert, Dr. Mize, determined that Dr. Ruyle was negligent and did
not meet the standard of care.  Dr. Mize
testified that steroids may inhibit healing, but clearly stated that
they would not stop healing.  Dr.
McBroom even testified that he found no fault with Dr. Valencia>s injecting Brumfield with steroids. 
Thus, there was contrasting evidence that directly related to Dr. Ruyle=s summary judgment assertions that he was not negligent and that Dr.
Valencia=s actions represented a new, independent and intervening cause.     








Evidence and reasonable
inferences are viewed in the light most favorable to the non-movant, Brumfield,
and we must indulge every reasonable inference and resolve all doubts in favor
of Brumfield.  See Nixon, 690
S.W.2d at 549; McClure, 147 S.W.3d at 652.  Furthermore, Brumfield=s summary judgment response did not have to establish a fact as a
matter of law.  Rather, Brumfield only
had to raise an issue of fact material to the outcome of the case.  See Tex.
R. Civ. P. 166a(c); Siegler, 899 S.W.2d at 197. 

Accordingly, after reviewing
the evidence, we hold that a fact question exists as to whether any act or
omission by Dr. Ruyle proximately caused Brumfield=s asserted injuries.  We further
hold that a fact question exists as to whether the alleged acts or omissions by
Dr. Valencia were a new, independent and intervening cause of Brumfield=s asserted injury.  We sustain
Brumfield=s second
issue.

V.  Conclusion

Having overruled Brumfield=s first issue, we affirm the judgment of the trial court dismissing
Dr. Valencia.  Having sustained Brumfield=s second issue, we reverse the grant of summary judgment in favor of
Dr. Ruyle and remand this cause to the trial court for further proceedings.

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

 

DELIVERED:
April 5, 2007

 











[1]See Act
of May 30, 1977, 65th Leg., R.S., ch. 817, '' 1.01-12.01, 1977 Tex. Gen.
Laws 2039‑53, repealed by Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, '
10.09, 2003 Tex. Gen. Laws 847, 884.  





[2]Although
his report specifically referenced his review of the care and subsequent
treatment that Dr. Valencia provided to Brumfield, Dr. Mize offered no opinion
critical of Dr. Valencia=s
care.





[3]We would observe that, under former
article 4590i, section 13.01(k)(2), a proper report may not be used as summary
judgment evidence, whereas no apparent prohibition exists against the use of
deposition testimony.





[4]Dr.
Ward explained his opinion as follows:

 

My honest opinion is that I believe that
she was a -- I mean, she=s a
poor surgical candidate and I -- I think -- I mean, there=s a
multi factorial causes but I think injecting medication of a steroid into a --
patients who are on chronic steroids or orally or inhaled steroids and you
inject steroids into their elbow, these people may not demonstrate a normal
response to infection.  They may not get
red.  Their elbow may get red and swollen
and hot and look like something it is going on. 
I mean, it may just look fairly benign. 
I mean, looking at it may just be a normal looking elbow that=s a
little swollen and when you do those kind of things, I mean, I think that=s --
you know, you -- you have basically put the patient in the best situation for
an infection you could give them.