Marjorie BRUMFIELD, Appellant,

v.

Stephen D. RUYLE, M.D. and Jorge Valencia, M.D., Appellees.

No. 2–06–037–CV.

Court of Appeals of Texas, Fort Worth.

April 5, 2007.

Alfred W. Ellis, Sommerman & Quesda, L.L.P., Dallas, for Appellant.

Kristi R. Weaber, Mayfield, Crutcher and Sharpee, L.L.P., Amarillo, Charles Barnard, Wichita Falls, for Appellees, Stephen D. Ruyle, M.D.

J. Wade Birdwell, and James G. Stouffer, Jr., Wallach, Andrews & Stouffer, P.C., Fort Worth, for Jorge Valencia, M.D.

PANEL A: LIVINGSTON, DAUPHINOT, and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I. Introduction

In two issues, Appellant Majorie Brumfield asserts that the trial court erred by (1) dismissing Brumfield's medical mal-

practice lawsuit against Appellee Jorge Valencia, M.D. ("Dr. Valencia") for failure to furnish an expert report and (2) granting Appellee Stephen D. Ruyle, M.D.'s ("Dr. Ruyle") motion for summary judgment. We affirm the trial court's judgment dismissing Dr. Valencia from the lawsuit, but we reverse the summary judgment for Dr. Ruyle and remand to the trial court.

## II. Factual and Procedural Background

This is the case of the loose screw.

On August 28, 2003, Brumfield filed a health care liability claim against Dr. Ruyle, an orthopedic surgeon practicing in Wichita Falls. In her original petition, Brumfield alleged that Dr. Ruyle provided negligent treatment and follow-up care for her fractured forearm from September 3, 2002 through May 21, 2003, and that such medical negligence proximately caused severe and disabling injuries to her arm. Dr. Ruyle generally denied Brumfield's allegations and subsequently asserted that "new, independent, and intervening causes not reasonably foreseeable" were the proximate and sole cause of her injuries.

This suit is governed by former article 4590i of the Medical Liability and Insurance Improvement Act of Texas (hereinafter "former article 4590i").[1] Pursuant to the statutory requirements of former article 4590i, section 13.01(d), the deadline for furnishing Dr. Ruyle with an expert report and curriculum vitae demonstrating the prima facie merits of Brumfield's health care liability claim was February 24, 2004, 180 days after she filed suit. On January 13, 2004, she timely filed the "Report and Curriculum Vitae of Expert, Roby Mize, M.D." ("Dr. Mize"). According to his curriculum vitae, Dr. Mize was a board-certified orthopedic surgeon with staff privileges at Presbyterian Medical Center and Parkland Memorial Hospital in Dallas and was a member of the faculty of the Department of Orthopedic Surgery at the University of Texas Southwestern Medical Center.

Throughout his report, Dr. Mize was critical of the medical and surgical care that Dr. Ruyle provided to Brumfield upon her presentation to the emergency room of Kell West Regional Hospital suffering from a fractured left forearm, and thereafter.[2] The surgery subsequently performed by Dr. Mize included a "compression AO screw placement in the fracture." After providing a detailed summary of Brumfield's course of treatment and setting forth the standard of care applicable to an orthopedic surgeon treating a patient with her symptoms, Dr. Mize discussed the manner in which he believed that Dr. Ruyle breached the standard of care, including Dr. Ruyle's failure to properly diagnose the older nature of Brumfield's fracture from the outset, failure to properly repair the fracture during the initial surgery, and failure to timely and properly assess and treat the repaired fracture for the known post operative complication of infection. Dr. Mize further opined that such negligence proximately caused Brumfield to undergo multiple additional surgeries to correct the failed repair.

On March 1, 2005, Dr. Ruyle filed a motion for leave to designate Dr. Valencia

---

1. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–12.01, 1977 Tex. Gen. Laws 2039–53, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

2. Although his report specifically referenced his review of the care and subsequent treatment that Dr. Valencia provided to Brumfield, Dr. Mize offered no opinion critical of Dr. Valencia's care.

as a third party responsible for the injuries made the basis of Brumfield's health care liability claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.004(a) (Vernon 1997) (providing that a defendant may file a motion for leave to designate a person as a responsible third party). Dr. Ruyle argued that Dr. Valencia negligently prescribed and administered steroids to Brumfield after her initial surgery without communicating this to Dr. Ruyle, thereby inhibiting the post operative healing process and encouraging infection to the point that the repair of the fracture failed.

In support of his argument, Dr. Ruyle referred to Dr. Mize's deposition testimony that, if Dr. Valencia had treated Brumfield with "some type of steroid medication" post operatively, such treatment could affect the healing of her fracture repair because steroids inhibit the normal healing process. Dr. Ruyle also referred to the expert report of another orthopedic surgeon, one of his testifying experts, Lyn D. Ward, M.D. ("Dr. Ward"). Dr. Ward opined that a steroid injection around the site of the fracture repair would inhibit the natural process of healing, contribute to non-union, and predispose the patient to infection; with Brumfield's other problems of pneumonia, smoking, and obesity, the steriod injection would "overwhelm" the attempt to heal the fracture. Dr. Ward concluded, "Confounding variables such as treatments to the elbow outside the care of Dr. Ruyle lay the stern foundation for reasonable doubt in assigning any negligence on his part." Dr. Ruyle did not, however, attach the transcript of Dr. Mize's deposition or the report of Dr. Ward in support of his motion.

The motion for leave to add Dr. Valencia as a responsible third party did not attribute any opinions to either Dr. Mize or Dr. Ward that (1) established the standard of care applicable to a family and general practitioner such as Dr. Valencia attempting to address a post operative patient suffering from both pneumonia and bursitis in the left elbow, as distinct and apart from the left forearm fracture repair, (2) described how the treatment provided by Dr. Valencia breached any such standard of care, or (3) provided any explanation of the causal relationship between any such breach and the injuries made the basis of Brumfield's health care liability claim.

On March 16, 2005, Brumfield objected to Dr. Ruyle's motion for leave, complaining that Dr. Ruyle had failed to file a proper expert report pursuant to former article 4590i, section 13.01(d). Brumfield further argued,

> Neither the deposition testimony of the Plaintiff's expert, Dr. Roby Mize, nor the medical report of the Defendant's expert, Dr. Lyn Ward, make any allegation whatsoever that Jorge Valencia, M.D., failed to follow the appropriate standard of care as would a physician of ordinary prudence under the same or similar circumstances or that such failure was a proximate cause of damages to the Plaintiff. While the deposition of Dr. Roby Mize and the report of Dr. Lyn Ward may imply the conduct of Dr. Jorge Valencia was a cause of damage to the Plaintiff, without an opinion that his conduct was, in fact, a violation of the appropriate standard of care, Dr. Valencia cannot be found to be a responsible third party.

Thereafter, on March 31, 2005, Dr. Ruyle filed his first amended motion to designate Dr. Valencia as a responsible third party, attaching Dr. Ward's curriculum vitae, his original expert report, and his amended expert report dated March 24, 2005. The amended expert report add-

ed the following conclusion concerning Dr. Valencia:

> In reference to the definition in the Texas Pattern Jury Charge, the treatments performed by Dr. Valencia ... failed to follow the appropriate standards of care as would a physician of ordinary prudence under the same or similar circumstances and at [sic] such failure was a proximate cause of damages to the plaintiff. Dr. Valencia in failing to notify Dr. Ruyle as noted above, failed to follow the appropriate standards of care in this or a similar circumstances which was a direct proximate cause of damages to Mrs. Brumfield.

According to Dr. Valencia, like the original report, this addition to the amended report contained no opinions establishing the standard of care applicable to a family and general practitioner such as Dr. Valencia when presented with a patient such as Brumfield suffering from pneumonia and bursitis in the left elbow. Nor did the remainder describe how the treatment provided by Dr. Valencia breached any such standard of care or provided any explanation of how any such breach proximately caused the injuries that were the basis of Brumfield's claim. However, Brumfield thereafter withdrew her objection to designating Dr. Valencia as a responsible third party, and the trial court granted the amended motion by written order on April 21, 2005.

On April 25, 2005, Brumfield filed her third amended petition in which she directly asserted a health care liability claim against Dr. Valencia as follows:

> As a licensed physician, he provided medical care to the fractured left forearm of the Plaintiff during the same period of time care was provided to the Plaintiff by Defendant Ruyle. This care

was provided to the Plaintiff without coordination with Defendant Ruyle. Plaintiff alleges the treatment provided by the Defendants were negligently provided and was a proximate cause of her injuries and damages.

Her allegation made no specific reference to any particular treatment provided by Dr. Valencia, including his prescription and administration of any form of steroid treatment for her pneumonia or bursitis. Dr. Valencia generally denied her allegations, and Dr. Ruyle responded that Dr. Valencia's negligence was a new and independent cause that would preclude any finding of causation against Dr. Ruyle.

The deadline for furnishing Dr. Valencia with an expert report and curriculum vitae demonstrating the prima facie merits of Brumfield's health care liability claim against him was October 22, 2005, 180 days after she added him as a third-party defendant. Brumfield did not furnish counsel for Dr. Valencia with an expert report or curriculum vitae from a qualified physician by this deadline. Nor did she furnish an amended expert report from Dr. Mize or otherwise indicate that she intended his deposition testimony to fulfill her statutory obligation to furnish an expert report and curriculum vitae. Finally, at no time before the deadline did Brumfield furnish counsel for Dr. Valencia with the original report, supplemental report, or curriculum vitae of Dr. Ward or otherwise indicate that she intended to rely upon his report and curriculum vitae as fulfilling her statutory obligation.

On November 29, 2005, Dr. Valencia filed a motion to dismiss Brumfield's health care liability claim against him based on her failure to furnish a timely expert report in compliance with former article 4590i, section 13.01(d). On Decem-

ber 21, 2005, the trial court conducted a hearing on the motion. On the day of the hearing, Brumfield filed her response to the motion, arguing that she had complied with her statutory obligations because Dr. Valencia had already received the expert report and curriculum vitae of Dr. Ward, upon which she relied in adding Dr. Valencia as a defendant in her third amended petition. This was the first time that Brumfield indicated in any manner that she intended to rely upon any expert report other than the original report authored by Dr. Mize.

Her response referenced Dr. Ward's original report and curriculum vitae, attached as exhibits B and C to Dr. Ruyle's amended motion for leave to designate Dr. Valencia as a responsible third party, but not Dr. Ward's supplemental report, attached thereto as exhibit D, which added the opinions concerning Dr. Valencia's professional responsibility. Dr. Valencia asserts on appeal that Brumfield's response urged her reliance upon a report to which she herself had objected as failing to establish the standard of care, breach, and causation elements of any potential health care liability claim against Dr. Valencia.

Brumfield further argued at the hearing that Dr. Valencia had actual notice of the merits of her claim because Dr. Ruyle's counsel provided Dr. Valencia's counsel with not only Dr. Ward's original report but also his deposition transcript. Dr. Valencia asserted that Brumfield's response, other than stating that Dr. Ward was critical of the care that Dr. Valencia provided, failed to detail the manner in which Dr. Ward's testimony established the prima facie elements of her health care liability claim against him.

At the close of the hearing, the trial court ruled from the bench that former article 4590i, section 13.01(d) placed an affirmative duty upon a health care liability claimant to furnish an expert report and curriculum vitae to counsel for each named defendant and that it did not permit Brumfield to rely upon the actions of counsel for Dr. Ruyle or upon any other actual notice received by Dr. Valencia to meet her statutory obligation. Accordingly, the trial court granted Dr. Valencia's motion to dismiss with prejudice and entered an order to that effect on December 22, 2005. Two weeks later, the trial court granted Dr. Ruyle's motion for summary judgment that he had filed on November 4, 2005, without specifying the reason therefor. The court ordered that Brumfield take nothing against Dr. Ruyle. Brumfield now appeals.

## III. Dismissal of Dr. Valencia

In her first issue, Brumfield asserts error on the part of the trial court in granting Dr. Valencia's motion to dismiss for failure to furnish an expert report to him. Former article 4590i, section 13.01(d), applicable at the time, stated,

> (d) not later than the later of the 180th day after the date on which a health care liability claim is filed ... *the claimant shall,* for each physician or health care provider against whom a claim is asserted:

> > (1) *furnish to counsel* for each physician or healthcare provider *one or more expert reports, with a curriculum vitae* of each expert listed in the report....

Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(d), 1995 Tex. Gen. Laws 985, 986 (repealed 2003) (emphasis supplied). The result of failing to comply with the statute is dismissal, with the

abuse of discretion standard utilized to review the dismissal. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). Brumfield contends that she substantially complied with the requirements of former article 4590i because (1) Dr. Ruyle's "First Amended Motion to Designate Valencia as a Responsible Third Party" attached the report and curriculum vitae of Dr. Ward and, hence, Dr. Valencia was "on constructive notice of the district court's file," and (2) Dr. Ruyle's attorney forwarded a copy of this motion to Dr. Valencia's attorney along with a copy of Dr. Ward's deposition. In short, Brumfield argues that because Dr. Valencia possessed a copy of Dr. Ward's report and deposition, the statutory requirements were sufficiently fulfilled.

There appears to be no case law discussing this situation. Brumfield acknowledges this but points to *Butler v. Taylor,* 981 S.W.2d 742 (Tex.App.-Houston [1st Dist.] 1998, no pet.), wherein our sister court found substantial compliance with the notice requirement of former article 4590i, section 4.01(a) when the plaintiff sent the notice of claim to the defendant by express mail, as opposed to certified mail. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 4.01(a), 1977 Tex. Gen. Laws 2039, 2047–48 (repealed 2003). Of course, in that case, *the claimant did furnish the notice* to the health care provider. We find that case to be distinguishable on its face.

■ Without deciding whether the report itself meets the requirements of former article 4590i, since the statute plainly says that the *claimant shall furnish* an expert's report, we hold that under the circumstances of this case, Brumfield did not satisfy the statute's requirements. Because Brumfield herself did not directly furnish a copy of the report to Dr. Valencia, did not cause a copy of the report to be furnished to him, and did not inform him until the day of the hearing on the motion to dismiss that she intended in some way to rely on anything other than her own expert's report, we do not see how this possibly fulfills the requirement of the wording of the statute. Without deciding whether a deposition constitutes a report,[3] we hold that the same analysis applies to Dr. Ward's deposition, so neither does the deposition satisfy the statute's requirements. We overrule Brumfield's first issue.

## IV. Grant of Dr. Ruyle's Motion for Summary Judgment

In her second issue, Brumfield asserts error on the part of the trial court in granting Dr. Ruyle's motion for summary judgment.

### A. Standard of Review

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex.2004); *see* Tex.R.App. P. 166a(b), (c). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d

---

3. We would observe that, under former article 4590i, section 13.01(k)(2), a proper report may not be used as summary judgment evidence, whereas no apparent prohibition exists against the use of deposition testimony.

195, 197 (Tex.1995). A non-movant's summary judgment response does not have to establish a fact as a matter of law. Rather, the non-movant must raise an issue of fact material to the outcome of the case. *See* Tex.R. Civ. P. 166a(c); *Siegler*, 899 S.W.2d at 197.

In deciding whether there is a disputed issue of material fact precluding summary judgment, the court takes as true all evidence favorable to the non-movant. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex.2002); *McClure v. JPMorgan Chase Bank*, 147 S.W.3d 648, 653 (Tex.App.-Fort Worth 2004, pet. denied). Evidence and reasonable inferences are viewed in the light most favorable to the non-movant, Brumfield, and the court must indulge every reasonable inference and resolve all doubts in favor of Brumfield. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985); *McClure*, 147 S.W.3d at 653.

**B. Summary Judgment in Medical Malpractice Causes of Action**

 A plaintiff in a medical malpractice action is required to establish the following elements: (1) a duty owed by the health care provider to act according to the applicable standard(s) of care; (2) a breach of that duty; (3) an injury; and (4) a causal connection between the breach of the standard and the injury. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex.1995); *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex.1988). With respect to the causation element, the plaintiff must show evidence that to a reasonable degree of medical probability, the injury claimed was proximately caused by the negligence of the defendant. *Park Place Hosp.*, 909 S.W.2d at 511; *Lenger v. Physician's Gen. Hosp. Inc.*, 455 S.W.2d 703, 706 (Tex.1970); *Marvelli v. Alston*, 100 S.W.3d 460, 470 (Tex.App.-Fort Worth 2003, pet. denied). The proximate cause element consists of both foreseeability and cause-in-fact. Cause-in-fact is established when the plaintiff shows by a preponderance of the evidence that the negligent act or omission is a substantial factor in bringing about the harm, and without which the harm would not have occurred. *Park Place Hosp.*, 909 S.W.2d at 511; *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995).

**C. Dr. Ruyle's Motion for Summary Judgment**

Dr. Ruyle moved for a traditional summary judgment on two grounds: (1) "[a]s a matter of law the plaintiff has failed to prove Stephen D. Ruyle, M.D. was a proximate cause of plaintiff's injuries," and (2) "[a]s a matter of law the plaintiff has failed to prove Stephen D. Ruyle, M.D. was a proximate cause of plaintiff's injuries because Dr. Valencia's negligence in treating plaintiff with steroids was a new and independent cause."

The evidence demonstrated that the pertinent medical sequence of events was as follows:

1. On August 30, 2002, Dr. Ruyle performed a fracture repair on Brumfield's left elbow utilizing a single fixation screw.

2. During the course of the operative procedure, Dr. Ruyle had a great deal of difficulty passing a guide wire across the fracture site and had to take fracture fragments apart in order to do so.

3. Dr. Ruyle had his first post operative visit with Brumfield on September 20, 2002, in which he evaluated Brumfield as having had good healing.

4. After two additional post operative visits where healing was evaluated as good, on January 17, 2003, some four and one-half months after surgery, Dr. Ruyle first determined that a non-union of the fracture was developing. In spite of this fact, he chose not to re-evaluate Brumfield for an additional two months.

5. On January 29, 2003, Dr. Valencia aspirated fluid from Brumfield's left bursa (not the operative site), and on a second office visit shortly thereafter, he performed a second aspiration and injection of the bursa with a steroid.

6. On February 12, 2003, Dr. Valencia administered steroids to Brumfield for her continuing chronic obstructive pulmonary disease ("COPD").

7. Not until March 21, 2003, did Dr. Ruyle again see Brumfield and make a formal diagnosis of a non-union as a result of the failure of the internal fixation device.

Brumfield's expert witness, Dr. Mize, determined that Dr. Ruyle was negligent as follows:

1. He failed to establish a correct diagnosis of the fracture prior to surgery;

2. He failed to properly assess Brumfield's injury and did not suspect that it included an old, partially healed fracture prior to surgery;

3. He failed to establish good indications for surgery upon Brumfield;

4. He failed to perform careful pre operative planning prior to the surgery;

5. He failed to perform the proper surgery by augmenting the screw fixation device with a tension wire band, which would have helped to prevent subsequent implant failure; and

6. He failed to provide proper follow-up care following his diagnosis of a non-union and an obvious ongoing failure of the fixation device.

Additionally, Dr. Mize opined that Dr. Ruyle failed to meet the standard of care because he did not (1) properly assess the continuing complaint of pain by the patient and order appropriate diagnostic studies to determine the source of pain; (2) follow and assess the patient at reasonably frequent intervals in the event of known ongoing complications such as implant failure; and (3) suspect infection as a possible cause of pain and implant failure and order appropriate diagnostic studies to confirm or rule out this complication in a timely manner.

Dr. Mize further opined that as a result of these failures, the single screw used for fixation failed and a non-union developed. Because Dr. Ruyle failed to meet the proper standard of care during post operative management, and because Dr. Ruyle repeatedly neglected to order appropriate diagnostic studies to confirm or rule out the presence of infection, Dr. Mize con-

cluded, valuable time was lost and the infection progressed to a catastrophic stage, requiring multiple subsequent surgeries.

By contrast, Dr. Ruyle also presented expert testimony in support of his motion. Dr. Mize, Brumfield's own expert, admitted that it is a well-known medical fact that steroids inhibit the normal healing process, and steroid use can have serious implications by retarding the healing process of a left elbow surgical wound. Further, Dr. Mize admitted that Dr. Valencia's use of steroid treatment for Brumfield could have affected the healing of her left elbow by suppressing her immune system. Dr. Mize testified that he does not use steroids on post-surgical patients because steroids are known to inhibit the normal healing process.

Additionally, Dr. Ruyle argues that the summary judgment evidence from Dr. Ward included discussion supporting the appropriateness of Dr. Ruyle's care and treatment of Brumfield. In this regard, Dr. Ward stated as follows:

> In my opinion, Dr. Ruyle's care and treatment before surgery, during surgery and after surgery, of Mrs. Brumfield met the standards of care and was not [the] proximate cause of her injuries or outcome. Dr. Ruyle did not fail to meet [the] standard of care with regard to Mrs. Brumfield's infection treatment. With reference to the definitions in the Texas Pattern Jury Charge, the surgical diagnosis and treatment performed by Dr. Ruyle met standards of care within reasonable medical probability. All of my opinions are based upon reasonable medical probability.

Dr. Ward further testified that the steroids injected in Brumfield's elbow had a significant role in causing the non-union of the fracture, as well as her general medical condition. Dr. Ward stated that "[a] steroid injection around a site of fracture healing will inhibit the natural process of healing, contribute to non-union, and predispose the patient to infection." Dr. Ward also testified that "no orthopedist would" inject steroids around hardware, and he mentions support for this proposition in medical literature.

Dr. Valencia testified that he knew Dr. Ruyle had operated on Brumfield's elbow/forearm and had inserted metal into the elbow. It is undisputed that in December 2002, Dr. Valencia drained the bursa in the elbow and injected a cortisone, or steroid, solution into the area. He admitted that steroids are known to delay healing in general. He further agreed with Dr. Ward that "[a] steroid injection around a site of fracture healing will inhibit the natural process of healing, contribute to non-union, and predispose the patient to infection." Dr. Valencia further admitted that he did not contact Dr. Ruyle prior to or immediately following the steroid injection to notify him that the injection had been made, and that he should have done so. When asked why he did not share that information with Dr. Ruyle, Dr. Valencia testified that "the only thing that I can tell you is, it would have been better. I—I shouldn't assume the care of her elbow on my own." Dr. Valencia further admitted that he administered steroids to Brumfield again in February 2003 for treatment of her COPD and that he again failed to advise Dr. Ruyle of this treatment in spite of his knowledge that steroids inhibit the healing process.

Dr. Valencia testified that he was not critical in any way of the medical care and treatment that Dr. Ruyle provided to

Brumfield. Dr. Ward also did not have any criticisms of the medical care provided by Dr. Ruyle to Brumfield, and he asserted that Dr. Ruyle did not proximately cause Brumfield's injury.

### D. Proximate Cause

As set forth in the Pattern Jury Charge, "proximate cause" and "new and independent cause" are defined as follows:

> Proximate cause, means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a physician exercising ordinary care would have foreseen that the event, might reasonably result therefrom. There may be more than one proximate cause of an event.
>
> New and independent cause means the act or omission of a separate and independent agency, not reasonably foreseeable by a physician exercising ordinary care, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

2 COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 50.4 (2006).

The causation and new and independent cause issues were addressed as follows:

4. Dr. Ward explained his opinion as follows:
My honest opinion is that I believe that she was a-I mean, she's a poor surgical candidate and I–I think-I mean, there's a multi

1. Dr. Mize, while testifying that steroids may inhibit healing, also clearly stated that they would not stop healing. Specifically, Dr. Mize stated, "I think it could inhibit it. I don't think it could completely prevent it."

2. Dr. Mize stated that steroid use would not cause the fixation device to back out and contribute to a non-union, which was one of the injuries Brumfield claimed to have suffered as a result of Dr. Ruyle's improper pre operative planning.

3. While Dr. Valencia acknowledged that steroids are known to delay healing in general, he would not expect a steroid injection to delay healing of an operative fracture that was three months old and outwardly appeared to be healing at the time that he injected Brumfield's bursa.

4. Dr. Ruyle himself advised Dr. Valencia in March 2003, after Brumfield's non-union had been diagnosed, that such non-union was not the result of any infectious process that may have been inhibited by the utilization of steroids.

5. The testimony of Dr. Ruyle's own expert witness, Dr. Ward, regarding the ultimate cause of Brumfield's infection is not clear, direct, and concise.[4]

6. Dr. Ward went on to testify that while the steroids injected into the bursa may have had a significant role in the non-union of the Brumfield's fracture, other causes included her general medical condition and "all things that encircle that."

7. The testimony of Dr. Ruyle's other expert witness, Robert L. McBroom, M.D. ("Dr. McBroom") found no fault with the conduct of Dr. Valencia.

factorial causes but I think injecting medication of a steroid into a-patients who are on chronic steroids or orally or inhaled steroids and you inject steroids into their

8. Dr. McBroom also testified that while steroids may inhibit healing, there was no scientific medical evidence in Brumfield's medical records that steroids in this instance caused her infection:

Q. And once again, from just the strictly—the medical records and anything that's in the records from Ms. Brumfield, is there anything that proves in fact that her injection, aspirations or steroid into her bursa was in fact a cause of the infection—or again, is that something that—from a general medical standpoint you are stating?

A. No you're correct. There was no culture evidence which is what is required that there was any infection that at that time.

### E. Analysis

■ This is a classic example of "battling experts." As detailed above, both sides presented experts who gave conflicting assessments regarding the cause of Brumfield's maladies. For example, Dr. Ward testified that Dr. Ruyle's care and treatment of Brumfield before, during, and after surgery met the standard of care and was not the proximate cause of her injuries. Moreover, Dr. Ward further testified that the steroids injected in Brumfield's elbow had a significant role in causing the non-union of the fracture, as well as her general medical condition. Conversely, Brumfield's expert, Dr. Mize, determined that Dr. Ruyle was negligent and did not meet the standard of care. Dr. Mize testified that steroids *may* inhibit healing, but

clearly stated that they would *not* stop healing. Dr. McBroom even testified that he found no fault with Dr. Valencia's injecting Brumfield with steroids. Thus, there was contrasting evidence that directly related to Dr. Ruyle's summary judgment assertions that he was not negligent and that Dr. Valencia's actions represented a new, independent and intervening cause.

Evidence and reasonable inferences are viewed in the light most favorable to the non-movant, Brumfield, and we must indulge every reasonable inference and resolve all doubts in favor of Brumfield. *See Nixon,* 690 S.W.2d at 549; *McClure,* 147 S.W.3d at 652. Furthermore, Brumfield's summary judgment response did not have to establish a fact as a matter of law. Rather, Brumfield only had to raise an issue of fact material to the outcome of the case. *See* TEX.R. CIV. P. 166a(c); *Siegler,* 899 S.W.2d at 197.

Accordingly, after reviewing the evidence, we hold that a fact question exists as to whether any act or omission by Dr. Ruyle proximately caused Brumfield's asserted injuries. We further hold that a fact question exists as to whether the alleged acts or omissions by Dr. Valencia were a new, independent and intervening cause of Brumfield's asserted injury. We sustain Brumfield's second issue.

### V. Conclusion

Having overruled Brumfield's first issue, we affirm the judgment of the trial court dismissing Dr. Valencia. Having sustained Brumfield's second issue, we reverse the

---

elbow, these people may not demonstrate a normal response to infection. They may not get red. Their elbow may get red and swollen and hot and look like something it is going on. I mean, it may just look fairly benign. I mean, looking at it may just be a

normal looking elbow that's a little swollen and when you do those kind of things, I mean, I think that's-you know, you-you have basically put the patient in the best situation for an infection you could give them.

grant of summary judgment in favor of Dr. Ruyle and remand this cause to the trial court for further proceedings.