

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00353-CV

ESTATE OF GLENDA RHOADES,
DECEASED

----------

FROM COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY
TRIAL COURT NO. CIV-13-0909

----------

## OPINION

----------

## I.  Introduction

In two issues, appellants Norma Anderson, Paula Gilleland, Gerald Don Marrs, Joann Dycus, and Vicki George appeal the trial court's judgment for appellee Elise Kinler, arguing that the trial court erred by denying their motion for summary judgment and by granting Kinler's motion for summary judgment.  We reverse.

## II. Factual and Procedural Background

Article III of Glenda Rhoades's will, which she signed on October 4, 2007, made the following bequests:

- the real property constituting her residential homestead to her father, Glen Rhoades,

- all of her personal property to her father,

- "all of the rest of [her] estate," to her father, but if he predeceased her, to Elise Kinler, but if Kinler should predecease her, to Kinler's son, Michael Kinler, and

- "any other property that has not been disposed of under any other provision of this Will" to her heirs at law.

Rhoades also named Kinler as the independent executor of her will. *See* Tex. Est. Code Ann. § 401.001(a) (West 2014).[1] Rhoades died on August 1, 2013, her father having predeceased her.

After Kinler filed an application to probate Rhoades's will in the Parker County Court, seeking the issuance of letters testamentary, Anderson filed an opposition to the appointment of Kinler as independent executor and an application for the appointment of a temporary administrator. *See id.* §§ 55.001,

---

[1]As observed in our prior opinion in this case, *see Estate of Rhoades*, No. 02-15-00081-CV, 2015 WL 3658065, at *1 n.2 (Tex. App.—Fort Worth June 11, 2015, no pet.) (mem. op.), because the date of Rhoades's death and some of the subsequent probate filings occurred before January 1, 2014, specified portions of the probate code, not their counterparts in the recently codified estates code, would apply to some aspects of the administration of Rhoades's estate. *See id.* As in that opinion, we note that because the estates code sections at issue are not substantively different from their predecessors in the probate code, we will cite to the estates code. *See id.*

256.052, 301.052, 301.101, 452.002 (West 2014 & Supp. 2016). Anderson also filed a motion to transfer the case to the county court at law in Parker County, which was granted on October 2, 2013.[2]

The will was initially ordered admitted to probate on December 12, 2013, but that order was subsequently set aside in a January 20, 2014 agreed order that also revoked the letters testamentary that had been issued to Kinler. An order was then issued appointing Kinler as temporary administrator with bond; letters of temporary administration were issued to her on May 19, 2014.

Both sides filed petitions for declaratory relief. Appellants sought a declaration that Rhoades's estate passed to Appellants under the residuary clause because the distributions to Rhoades's father failed. Kinler requested a declaration that the entire estate passed to Kinler because Rhoades's father predeceased her. Both Appellants and Kinler pleaded for the recovery of their respective attorney's fees.

Appellants and Kinler also filed competing motions for summary judgment, both claiming the unambiguous terms of the will justified a judgment in their favor on their respective declaratory-judgment claims. *See* Tex. R. Civ. P. 166a(c). Appellants also moved for summary judgment on their claim for attorney's fees, attaching summary judgment evidence proving up the requested amount of fees.

---

[2]A county court at law in Parker County does not have the jurisdiction of a probate court except in contested probate matters. Tex. Gov't Code Ann. § 25.1863 (West Supp. 2016).

Kinler did not seek the recovery of attorney's fees in her motion. On January 28, 2015, the trial court entered an order granting Kinler's summary judgment motion and denying Appellants'.

On March 24, 2015, Appellants filed a notice of nonsuit regarding their September 2013 contest. Approximately a week later, the trial court issued a new order admitting the will to probate, and two weeks after that, the trial court granted letters testamentary to Kinler. The trial court then granted the parties' agreed motion to dismiss their attorney's fee claims and transferred the case back to the county court on October 27, 2015. This appeal followed.

### III. Discussion

In their first issue, Appellants argue that the trial court erred by granting Kinler's motion for summary judgment because although Kinler claimed that the will was unambiguous, "numerous edits, deletions and modifications" were required to secure the estate for her. In their second issue, Appellants argue that the trial court erred by denying their motion for summary judgment because if all of the language in the unambiguous will is harmonized with no edits, deletions, or modifications, the entire estate must pass to them.

### A. Jurisdiction

Before we can reach the merits of either issue, we must address Appellants' contention that the trial court lacked jurisdiction to enter the summary judgment. Appellants argue that because at the time the trial court granted Kinler's summary judgment motion the order admitting the will to probate had

4

been set aside, any decision with regard to the will's meaning was not ripe for consideration, and the trial court's summary judgment was merely an advisory opinion. Kinler responds that the will could be construed by declaratory judgment without being admitted to probate and that Appellants waived their ripeness complaint by filing and arguing their own motion for summary judgment during the same time period.

First, a defect in subject matter jurisdiction can be raised at any time, may be raised for the first time on appeal, and may not be waived by the parties, *Tex. Ass'n of Bus. v. Tex. Air. Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993), and "'[r]ipeness is an element of subject matter jurisdiction.'" *Levatte v. City of Wichita Falls*, 144 S.W.3d 218, 222 (Tex. App.—Fort Worth 2004, no pet.) (quoting *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied*, 526 U.S. 1144 (1999)). Therefore, Appellants could not waive their ripeness complaint.

Having reviewed the admittedly sparse case law regarding whether a will must be admitted to probate before it becomes ripe for construction under the Uniform Declaratory Judgments Act (UDJA), this appears to be a case of first impression for our court. However, it does appear that in practice, Texas courts have construed wills under the UDJA before, during, and after admitting the will to probate.[3]

---

[3]In *McClure v. JPMorgan Chase Bank*, the trial court granted summary judgment declaring the effect of a purported holographic will before admitting any

5

Although not argued or decided based upon issues of ripeness or subject matter jurisdiction, the San Antonio court, in *Harkins v. Crews*, has most directly addressed the issue of whether a will can be construed under the UDJA before being admitted to probate. 907 S.W.2d 51, 55–57 (Tex. App.—San Antonio 1995, writ denied). *Harkins* involved three wills—dated in 1983, 1987, and 1990, respectively—and five codicils. *Id*. at 54. After the 1990 will and codicils were offered for probate by decedent's second wife, her daughter, her grandson, and the attorney who drafted the 1990 will, the decedent's children by his first wife opposed the application, applied for probate of the 1983 will and codicils, and sought a declaratory judgment invalidating the 1987 will and codicils. *Id*. at 54. The jury found that the 1987 and 1990 wills and codicils were executed when the decedent lacked testamentary capacity and that the 1990 will and codicils were procured by undue influence. *Id*. Thereafter, the trial court admitted the 1983

---

will into probate. 147 S.W.3d 648, 650 (Tex. App.—Fort Worth 2004, pet. denied). After the summary judgment was signed granting the declaratory relief sought, the trial court signed an order admitting a different will into probate and authorizing letters testamentary. *Id.* at 651. In *In re Estate of Gibbons*, the trial court admitted the will to probate and entered a declaratory judgment after the conclusion of a jury trial. 451 S.W.3d 115, 119 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). After the jury determined fact issues necessary to adjudicate the declaratory judgment action, the trial court signed an order admitting one will to probate, denying probate as to two other wills, and, in light of the jury's findings relevant to the will's no-contest clause, declaring two bequests in the probated will revoked. *Id.* In *Estate of Cole*, No. 02-13-00417-CV, 2015 WL 392230, at *1–2 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (mem. op.), *In re Estate of Florence*, 307 S.W.3d 887, 889 (Tex. App.—Fort Worth 2010, no pet.), and *Estate of Connally*, No. 02-07-00412-CV, 2008 WL 4531664, at *2 (Tex. App.—Fort Worth Oct. 9, 2008, no pet.) (mem. op.), the requests for declaratory judgment came after the wills at issue were admitted to probate.

6

will to probate, denied probate of the 1990 will and codicils, and declared the 1987 will and codicils invalid. *Id.* at 54–55.

On appeal, the appellants complained that the trial court had erred by rendering a declaratory judgment invalidating the 1987 will and codicils and argued that Texas law precluded the use of a declaratory judgment action to determine the validity of a will that had not been offered for probate. *Id.* at 55. Our sister court disagreed, observing that the trial court's action in rendering the declaratory judgment as to the invalidity of the 1987 will and codicils permitted a final determination of the rights of the parties from which the ultimate disposition of the decedent's estate could be determined, thus furthering the public policy of promoting judicial economy. *Id.* at 56–57. In reaching its conclusion, the court noted that the plain language of section 37.004 of the UDJA did not indicate that a will whose validity is being challenged must be one that has been offered or admitted to probate. *Id.* at 55–57. *Compare* Tex. Est. Code Ann. § 256.001 (West 2014) (stating that a will is not effective to prove title to, or the right to possession of, any property disposed of by the will until the will is admitted to probate), *with id.* § 101.001(a)(1), (3) (West 2014) (providing that if a person dies leaving a lawful will, all of the person's estate that is devised by the will vests immediately in the devisees and all of the person's estate that is not devised by the will vests immediately in the person's heirs at law).

Section 37.004 provides, in pertinent part, that a person interested under a will "may have determined any question of construction or validity arising under

7

the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder."  Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2015).  Section 37.005 further provides that a "person interested" through an executor, administrator, devisee, legatee, heir, or next of kin in the administration of a decedent's estate

> may have a declaration of rights or legal relations in respect to the . . . estate:
>
> (1) to ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;
>
> (2) to direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity;
>
> (3) to determine any question arising in the administration of the . . . estate, including questions of construction of wills and other writings; or
>
> (4) to determine rights or legal relations of an independent executor or independent administrator regarding fiduciary fees and the settling of accounts.

*Id.* § 37.005 (West 2015).

As the supreme court has reminded us, the UDJA is a "remedial" statute with its stated purpose "'to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.'"  *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (Vernon 1986)).  And to that end, the statute expressly provides that it "is to be liberally construed."  Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2015).  As observed in *Harkins*, there is no limitation in the

UDJA's plain language requiring a will's admission to probate before the statute may be invoked.[4]  907 S.W.2d at 57.

Appellants cite to *Cowan v. Cowan*, 254 S.W.2d 862, 865 (Tex. Civ. App.—Amarillo 1952, no writ), as authority for their position that the trial court's interpretation and construction of the will was not ripe for consideration because the will was not admitted into probate at the time summary judgment was considered and granted.  In *Cowan*, two siblings filed a declaratory judgment action to ascertain whether their mother possessed testamentary capacity necessary to the making of a will after they learned that she had named their brother as the principal beneficiary, rather than dividing the property among all of her children.  *Id.* at 862–63.  Responding to their brother's plea to the jurisdiction, in which he argued that since their mother was still alive, there was no justiciable controversy upon which to base a declaratory judgment action, the siblings argued that a controversy existed as to the validity of the will at a time when the

_____

[4]In a similar fashion, in the context of determining rights, status, or legal relations with regard to written contracts, the statute authorizes that "[a] contract may be construed either before or after there has been a breach." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(b) (West 2015).  The law does not require a breach to have already occurred but rather that "a justiciable controversy exists as to the rights and status of the parties and the controversy" that will be "resolved by the declaration sought." *Reynolds v. Sw. Bell Tel., L.P.*, No. 02-05-00356-CV, 2006 WL 1791606, at *5 (Tex. App.—Fort Worth June 29, 2006, pet. denied) (mem. op.) (citing *Bonham State Bank*, 907 S.W.2d at 467).  A "justiciable controversy" is more than merely a "hypothetical or contingent situation," a "theoretical dispute," or a question that is "not currently essential to the decision of an actual controversy."  *Id.*  Instead, it is a "real and substantial controversy" that involves "a genuine conflict of tangible interests."  *Id.*

issue could be determined "during the lifetime of all of the parties concerned." *Id.* at 863. The two siblings argued that because their mother was still living, she could "appear in court and thus assist the court and jury in determining her mental status, both now and at the time she executed the purported will." *Id.*

The court in *Cowan* concluded that the trial court lacked jurisdiction, holding,

> [S]ince Mrs. Cowan is not dead, there are no heirs and there is no will. Until she dies, the appellants have no interest in their mother's will. A will not having been presented to the court for probate, the Probate Court has no jurisdiction over it, even under the Uniform Declaratory Judgments Act, and neither the Probate Court nor the District Court[—]since a justiciable issue does not exist[—]is empowered to determine the validity of the instrument.

*Id.* at 865.

We reject Appellants' reliance on *Cowan* to support their argument that the will must be admitted to probate before any declaratory action would be ripe for consideration by the trial court, for two reasons. First, unlike the mother in *Cowan*, Rhoades is deceased. *Cf. id.* While Appellants recognize this, they point us to specific portions of the *Cowan* opinion that they contend support their position that even in circumstances where the maker of a will is dead, a trial court would lack jurisdiction until the will was admitted to probate. The passage to which Appellants refer us states,

> Until the purported will has been offered for probate, the Probate Court does not have the power, even though the maker is dead, to entertain a declaratory judgment for the purpose of obtaining an interpretation of the instrument. *Poore v. Poore*, 201 N.C. 791, 161 S.E. 532; *Love v. Rennie*, 254 Ala. 382, 48 So.2d 458.

10

In Anderson, Actions for Declaratory Judgments, p. 1297, it is said:

'So a declaratory or other action will not lie during the life of the testator to compel the surrender and cancellation of a will in the custody and control of a third party defendant on the ground that the testator did not possess testamentary capacity at the time of making and executing of the will. The court cannot in a declaratory action answer a purported question, even on an agreed statement of facts as to the existence, revocation, validity or construction of a will, for example, as to whether a joint and mutual will of husband and wife was revoked by the husband's marriage *after the wife's death where the will had never been probated*.'

*Id.* (emphasis added).

Despite the inclusion of this passage in the opinion, the facts in *Cowan* involved the maker of a will who was alive at the time the declaratory judgment was sought. *Id.* Indeed, much of the language in *Cowan* focuses on this very point.[5] *See id.* Because the consequences of the death of a testator were not

---

[5]By way of example, the *Cowan* court states:

- "Prior to the enactment of the Uniform Declaratory Judgments Act no court in Texas had the power to determine the validity of the will of a *person still alive* . . . ,"
- "*Until a man dies* it is not known who his heirs will be . . . ,"
- "[W]hether courts have the power to determine the validity of a will *during the life of the testator* is answered by this quotation . . . ,"
- "[T]he courts of this State do not have the power to determine the validity of the will *of a living person*,"
- "*Because their mother is still living*, the appellants are not her heirs,"
- "*Until Mrs. Cowan's death* there cannot be, in its truest sense, a will," and
- "[T]he instrument will not be admitted to probate *before the death of the testatrix*."

11

germane to the case, the court's musings in *Cowan* regarding such a circumstance could not have been part of the case's holding. At best, the comments to which Appellants direct us are obiter dicta and are not authoritative for the proposition they urge here. *See Gowin v. Gowin*, 264 S.W. 529, 539–40 (Tex. Civ. App.—Fort Worth 1924), *aff'd*, 292 S.W. 211 (Tex. Comm'n App. 1927, judgm't affirmed).

Perhaps more to the point, however, is that the court in *Cowan* did not hold that the probate court lacked jurisdiction because the will was not *admitted* to probate but rather because the will had not be *presented to the court for probate*. 254 S.W.2d at 865. Here, the will was presented to the court for probate and, for a period of time prior to the granting of summary judgment, the will had actually been admitted to probate. But the order admitting the will to probate and appointing Kinler as Independent Executor was set aside by an agreed order following a motion for new trial—a motion that challenged not the admission of the will into probate, but the permanent appointment of Kinler as independent executor thereunder. After being presented to the court for probate, the will here (as opposed to Kinler's appointment) was never contested, and its temporary hiatus from probate appears to be one of inadvertence that was corrected during

---

254 S.W.2d at 863–65 (emphasis added). The court concludes with "*since Mrs. Cowan is not dead*, there are no heirs and there is no will," and "[*u*]*ntil she dies*, the appellants have no interest in their mother's will." *Id.* at 865.

12

the pendency of this appeal, not as the result of any challenge to it or to its initial admission to probate.

While we do not find that *Cowan* supports the proposition Appellants urge, we do find the history and analysis used in *Cowan* instructive in this case:

> The [UDJA] does not, however, create any new substantive rights, nor was it so intended. . . . The Act is remedial in nature and procedural in character. It does not create jurisdiction in the courts over subjects in which they had no jurisdiction before the passage of the Act. It has only changed the method of exercising existing jurisdiction. Thus, a court cannot assume jurisdiction of any cause of action under the authority of the declaratory procedure where it could not have assumed jurisdiction before its enactment. *Kaufman & Ruderman, Inc. v. Cohn & Rosenberger, Inc., D.C.*, 86 F.Supp. 867.
>
> As stated by Prof. Hodges in Revised Vol. 8, Vernon's Annotated Civil Statutes, p. XI,
>
> > 'The Act does not authorize or permit an action for the mere purpose of declaring legal principles or of establishing uncertain facts. It is clear that a real controversy is necessary, that parties having conflicting legal interests are essential; that the judgment must be one which will effectively and practically settle conflicts of such legal interests of the parties.'
>
> The Act does not contemplate declarations upon matters where the interest of the plaintiff is contingent upon the occurrence of some future event. 16 Am.Jur. 293. Before the [UDJA] may be invoked, there must be present a justiciable issue; that is, the cause of action must relate to matters which are within the jurisdiction of the court. There must be a protectable right, not a future or speculative right.

*Id.* at 864–65.

In applying *Cowan*'s history and analysis of the UDJA vis-à-vis the justiciability of matters involving rights under a will, we see that the declaratory action sought here did rise to the level of a justiciable dispute. It did not seek to

13

merely declare legal principles or establish uncertain facts. Nor was the declaration sought speculative or contingent upon the occurrence of some future event. At the time the trial court considered and ruled upon the summary judgment motions, the parties were actively engaged in a real controversy with conflicting interests, and the objective sought by the declaratory judgment ruling was to resolve the conflict and end the controversy. Thus, the matters presented to the trial court were ripe and justiciable. And, notwithstanding the disposition on appeal, the trial court's decision did advance the resolution of the conflict between the parties.

Because the temporary removal of the will from probate did not render the trial court's decision advisory or moot under the circumstances presented here, we must reach the merits of Appellants' complaints.

## B. Summary Judgment

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Summary judgment is proper in cases in which the parties do not dispute the relevant facts. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000); *see G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296–97 (Tex. 2011) ("The purpose of a summary

14

judgment is to 'provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of [material] fact.'") (quoting *Gaines v. Hamman*, 358 S.W.2d 557, 563 (Tex. 1962)). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. The reviewing court should render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

As this court has previously stated with regard to will construction,

> The cardinal rule for construing a will is that the testator's intent must be ascertained by looking at the language and provisions of the instrument as a whole, as set forth within its four corners. The question is not what the testator intended to write, but the meaning of the words he actually used. Terms used are to be given their plain, ordinary, and generally accepted meanings unless the instrument itself shows them to have been used in a technical or different sense.

> If possible, all parts of the will must be harmonized, and every sentence, clause, and word must be considered in ascertaining the testator's intent. We must presume that the testator placed nothing meaningless or superfluous in the instrument. Where practicable, a latter clause in a will must be deemed to affirm, not to contradict, an earlier clause in the same will.

> Whether a will is ambiguous is a question of law for the court. A term is not ambiguous merely because of a simple lack of clarity or because the parties proffer different interpretations of a term. Rather, a will is ambiguous only when the application of established rules of construction leave its terms susceptible to more than one

15

reasonable meaning. If the court can give a certain or definite legal meaning or interpretation to the words used, the will is unambiguous, and the court should construe it as a matter of law.

*Steger v. Muenster Drilling Co.,* 134 S.W.3d 359, 372–73 (Tex. App.—Fort Worth 2003, pet. denied) (citations omitted).

Appellants contend that the trial court misconstrued article III of the will.

Article III of the will states as follows:

### III.
### DISPOSITION OF ESTATE

A.     I give all of my interest in the real property and the improvements thereto which constitute my residential homestead at the time of my death to Glen Rhoades in equal shares.

B.     I give, devise and bequeath all of my personal property to Glen Rhoades in equal shares.

C.     I give, devise and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, his portion shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler.

D.     Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate.

The parties agree that Glen Rhoades predeceased his daughter and that the will is unambiguous.

16

Kinler moved for summary judgment, arguing that "his portion" under Paragraph C meant Glen's entire "portion" under Article III because the entire estate could be categorized as either real or personal property under Paragraphs A and B and because in Article V, the testator again referenced Glen's "portion" to be used to create a trust for him if he was alive at the time of her death. In their competing motion for summary judgment, Appellants argued that all of Rhoades's property passed to them under the anti-lapse statute in estates code section 255.152 because there was no language in Paragraph A or B that stated what was to occur in the event that Glen predeceased his daughter. They further argued that under the estates code, the bequests in Paragraphs A, B, and C passed to the "residuary estate" in accordance with Paragraph D's plain meaning because the limiting language "as follows" in Paragraph C did not describe any property.

On appeal, however, Appellants offer an alternative argument that they argue harmonizes all four paragraphs in Article III:

> [t]he only logical interpretation . . . is that the bequests in paragraphs A and B lapse, causing those bequests (the Decedent's "residential homestead" and personal property) to fall into paragraph D – the residuary clause. Paragraph C would then pass all of Decedent's other real property to Appellee. No other interpretation of paragraph D satisfies the "harmony" requirement articulated in *Steger*.

In support of this argument, Appellants point out that, according to the Inventory filed in the probate proceeding, Rhoades's estate contains property that would

17

fall under Paragraph C, a parcel of non-homestead real property that was not covered by Paragraph A or B. We agree with this interpretation of the will.

Estates code section 255.152, "Failure of Devise; Effect on Residuary Estate," provides in subsection (a), "Except as provided by Sections 255.153 and 255.154,[6] if a devise, other than a residuary devise, fails for any reason, the devise becomes a part of the residuary estate." Tex. Est. Code Ann. § 255.152 (West 2014). This section applies unless the testator's will provides otherwise. *Id.* § 255.151 (West 2014).

Paragraph A gave "equal shares" of Rhoades's residential homestead to her father. This clause lapsed because Glen predeceased her, and the residential homestead fell into the residuary per estates code section 255.152(a). *See id.* § 255.152(a). Paragraph B gave "equal shares" of all of Rhoades's personal property to her father, and this clause lapsed too because of Glen's having predeceased her, dropping all of Rhoades's personal property into the residuary. *See id.*

Paragraph C gave Rhoades's father "all of the rest of [her] estate of whatsoever kind and wheresoever situated as follows" unless he predeceased her. While the clause does not specify *what* property would pass under this

---

[6]Neither section 255.153, which governs a devisee who is a descendant of the testator or the testator's parent and who is deceased at the time the will is executed, nor section 255.154, which governs devisees under class gifts, applies here. *Cf. id.* §§ 255.153–.154 (West 2014).

18

paragraph, after subtracting the residential homestead real estate and all of her personal property, the only property remaining would be non-homestead real estate. *See San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000) (explaining the distinction between real property—"land and generally whatever is erected or growing upon or affixed to land"—and personal property—"defined broadly to include everything that is subject to ownership not falling under the definition of real estate"); *see also* Tex. Est. Code Ann. § 22.028 (West 2014) (defining "personal property" as including an interest in goods, money, a chose in action, evidence of a debt, and a real chattel), § 22.030 (West 2014) (defining "real property" as including estates and interests in land, whether corporeal, incorporeal, legal, or equitable but excluding a real chattel). Included in the summary judgment evidence was the inventory prepared by Kinler as temporary administrator, which shows a parcel of real property designated as "Parcel #2." "Parcel #2" appears to be the only non-residential homestead real property and non-personal property remaining in Rhoades's estate, but to the extent that Rhoades owned other non-residential homestead real estate at the time of her death, that property would be conveyed pursuant to Paragraph C as well.

We hold that because Rhoades's father predeceased her, the gifts attempted under Paragraphs A and B failed and that property fell into the residuary clause in Paragraph D. However, since Paragraph C expressly provided that if Glen predeceased Rhoades, "his portion" should be distributed to Kinler, the property bequeathed under Paragraph C did not lapse, but rather

19

passed to Kinler. To hold otherwise would require editing, deleting, modifying, or ignoring altogether some of the paragraphs at issue, which we may not do.[7] *See Steger*, 134 S.W.3d at 372–73 (setting out rules of will construction).

For these reasons, we sustain Appellants' first issue and part of their second issue regarding the denial of their motion for summary judgment.

## IV. Conclusion

Having sustained Appellants' first issue and part of their second issue, we reverse the trial court's judgment and remand the case to the trial court to enter a declaratory judgment consistent this determination and our holding.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: WALKER, GABRIEL, and SUDDERTH, JJ.

WALKER, J., filed a concurring and dissenting opinion.

DELIVERED: September 8, 2016

---

[7]Characterizing Paragraph C as a residuary clause, as Kinler urges us to do, would force us to ignore Paragraph D entirely, rendering it meaningless.