**Motion to Dismiss Denied; Reversed and Remanded and Opinion filed June 4, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00256-CV

---

## IN THE ESTATE OF SETH SILVERMAN, M.D., DECEASED

---

**On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 458363**

---

## O P I N I O N

Appellant Karen Grenrood appeals the probate court's summary judgment denying a handwritten document admission to probate as the last will of Seth Warren Silverman, deceased. The probate court ruled that the document does not reflect any testamentary intent and does not transfer or dispose of any property. We hold, however, consistent with Supreme Court of Texas precedent, that the handwritten document can be testamentary in character because it appoints an executor. Further, we disagree with the probate court's legal conclusion that the document does not transfer or dispose of the testator's property because we

conclude it is ambiguous on that issue. We reverse the judgment and remand the case for further proceedings consistent with this opinion.

## Background

Seth Warren Silverman wrote the following on a piece of paper, entirely in his handwriting on October 26, 2015:

> 10/26/15
>
> Karen Grenrood is my executor, administrator, [and] has all legal rights to my estate in the case of my untimely or timely death.
>
> > Very truly yours,
> >
> > [signature]
> >
> > Jerry VanDaveer [witness]
> >
> > Karen Grenrood [witness]

Silverman was a forensic psychiatrist. Grenrood was Silverman's office manager and served in that capacity since approximately January 2015. Silverman died on May 4, 2017. A month later, Grenrood applied to probate the handwritten document as an alleged holographic will and asked the court to appoint her as independent executrix.

Brett Nathaniel Silverman and Gregg Joshua Silverman, the decedent's brothers, and Irma Lee Silverman, the decedent's mother (the "Contestants"), filed an opposition to probate and a contest to the alleged will. The Contestants asserted that the handwritten document was not a valid will because Silverman did not execute the instrument with the formalities required by law. Further, the Contestants alleged that Grenrood exerted undue influence over Silverman, and that Silverman would not have executed the document but for Grenrood's undue influence. The Contestants asked the court to deny the alleged will admission to

2

probate, to deny Grenrood's application to be appointed independent executrix, and to distribute Silverman's estate to the Contestants under Texas intestacy law.

The Contestants filed a motion for declaratory judgment, a traditional motion for summary judgment, and an amended traditional motion for summary judgment. The amended traditional motion for summary judgment is the relevant motion for our purposes. The Contestants claimed that no issue of material fact existed that the handwritten document does not convey property but at most merely appoints Grenrood as an executor. For that reason, the Contestants argued, the handwritten document lacks testamentary intent, is not a will, and should be denied admission to probate. The court granted the Contestants' amended motion for summary judgment and refused to admit the handwritten document to probate as a will, ruling that the handwritten document neither reflects testamentary intent nor transfers or disposes of Silverman's real or personal property.[1]

After the probate court signed the summary judgment, the Contestants filed an application to determine heirship. In that filing, the Contestants asserted that Silverman was not married and had no children at the time of his death, and that the Contestants were entitled to their respective shares of Silverman's estate under intestacy law.[2] The probate court signed a judgment declaring that Silverman died intestate, that Irma Silverman has a one-half interest in Silverman's real and

---

[1] The Contestants also moved for summary judgment on attorney's fees, which the probate court denied in a separate order. That issue is not before us.

[2] Silverman signed two other instruments purporting to be his wills—one in 1996, and the other in 2016. To the extent the Contestants have ever asserted that either the 1996 document or the 2016 document separately or collectively constitute Silverman's last will and testament, they have abandoned those positions and instead seek distribution of Silverman's estate under Texas intestacy law. No issue regarding either the 1996 document or the 2016 document is before us today.

personal property, and that Gregg and Brett Silverman each have a one-fourth interest in Silverman's real and personal property.[3]

Grenrood appeals the summary judgment and judgment of heirship.

## Motion to Dismiss

Before we consider the merits of Grenrood's appeal, we must first address the Contestants' motion to dismiss because it implicates this court's appellate jurisdiction. *See Gutierrez v. Stewart Title Co.*, 550 S.W.3d 304, 308 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The Contestants moved to dismiss Grenrood's appeal for want of jurisdiction, arguing that she has no standing to pursue this appeal.

Eligible applicants to probate a will are an executor named in the will, an independent administrator, or any interested person. Tex. Est. Code § 256.051(a). Silverman named Grenrood as his executor in the handwritten document at issue. Accordingly, Grenrood had standing to file an application for an order admitting the alleged will to probate and has standing to appeal. *Id.*

The Contestants further argue that Grenrood lacks "constitutional standing to maintain this appeal" because she lacks "an actual grievance that could be vindicated." We disagree. Grenrood offered the handwritten document for admission to probate, which the Contestants opposed. The probate court sustained the Contestants' contention that the instrument is not testamentary because it does not purport to dispose of property. Grenrood now appeals that judgment, contending that the probate court erred in holding that the alleged will lacks testamentary intent and in refusing to admit the will to probate on that ground. As the losing party to that challenge, Grenrood has standing to pursue the appeal.

---

[3] *See* Tex. Est. Code § 201.001 (providing for distribution of an estate of an intestate not leaving a spouse).

We deny the Contestants' motion to dismiss the appeal.

## Analysis

### A.     Standard of Review

The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We apply de novo review to a traditional summary judgment under Rule 166a(c), using the same standard that the trial court used in the first instance. *Doggett v. Robinson*, 345 S.W.3d 94, 98 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

### B.     Applicable Law

A court's first duty in a proceeding to admit a writing offered for probate is to determine whether the writing is testamentary in character. *Langehennig v. Hohmann*, 163 S.W.2d 402, 405 (Tex. 1942). If the document is not of testamentary character it is not a will and cannot be admitted to probate. *Id*.; *see also Hinson v. Hinson*, 280 S.W.2d 731, 733 (Tex. 1955) (a will must be executed with testamentary intent); *In re Estate of Allen*, 301 S.W.3d 923, 928 (Tex. App.—Tyler 2009, pet. denied). We must ascertain the testator's intent from the language used within the four corners of the instrument offered for probate. *Shriner's Hosp. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980). It is essential that the maker shall have intended to express his testamentary wishes in the particular document offered for probate. *Hinson*, 280 S.W.2d at 733.

The requisite testamentary intent does not depend upon the maker's realization that he is making a will, or upon his designation of the instrument as a will, but rather upon his intention to create a revocable disposition of his property

5

to take effect after his death. *Hinson*, 280 S.W.2d at 733. Generally, to be testamentary in character, a writing must possess certain essential characteristics. *See Utay v. Urbish*, 433 S.W.2d 905, 909 (Tex. App.—Dallas 1968, writ ref'd n.r.e.). The writing must be revocable during the maker's lifetime. *See, e.g.*, *Magids v. Am. Title Ins. Co.*, 473 S.W.2d 460, 464 (Tex. 1971); *Utay*, 433 S.W.2d at 909; *In re Estate of Parrimore*, No. 14-14-00820-CV, 2016 WL 750293, at *6 (Tex. App.—Houston [14th Dist.] Feb. 25, 2016, no pet.) (mem. op.). The writing must be ineffectual as a transfer of any rights or interest before death. *See, e.g.*, *Magids*, 473 S.W.2d at 464; *In re Estate of Allen*, 301 S.W.3d at 928; *Utay*, 433 S.W.2d at 909. Further, courts often state that the writing must operate to transfer, convey, or dispose of the testator's property upon death. *See, e.g.*, *Burton v. Bell*, 380 S.W.2d 561, 568 (Tex. 1964); *Hinson*, 280 S.W.2d at 564; *In re Estate of Allen*, 301 S.W.3d at 927-28; *In re Estate of Parrimore*, 2016 WL 750293, at *6.

This last characteristic is the crux of the present appeal. The Contestants' main premise below and in our court is that the handwritten document lacks testamentary intent because it does not transfer property as a matter of law. The trial court agreed when it granted summary judgment for the Contestants.[4]

Whether the handwritten document transfers or devises any property is a matter of document construction. Ordinarily, we would not construe a purported will before its admission to probate because determining whether a purported will is testamentary in nature generally does not involve its construction. In fact, "it is

---

[4] Although the probate court's order does not explicitly state that the handwritten document lacks testamentary intent *because* it does not transfer property, this is the only reasonable reading of the order. Whether the handwritten document transfers or devises Silverman's property is the only testamentary characteristic put into issue by the Contestants' amended summary judgment motion. Thus, the only reason the probate court could have concluded the document lacks testamentary character is because it does not transfer or devise property.

not the province of the court to construe a will in a proceeding for its probate." *Langehenning*, 163 S.W.2d at 405; *see also Dallas Servs. for Visually Impaired Children, Inc. v. Broadmoor II*, 635 S.W.2d 572, 575 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) ("It is not necessary to construe a will to admit it to probate and appoint an executor."); *In re Estate of Self*, 591 S.W.2d 338, 340 (Tex. App.—Tyler 1979, no writ). Construction of a purported will's property disposition typically occurs after the writing has been determined to be a will and has been admitted to probate. *See Langehenning*, 163 S.W.2d at 405; *accord also* Tex. Est. Code § 256.001 ("[A] will is not effective to prove title to, or the right to possession of, any property disposed of by the will until the will is admitted to probate.").

On occasion, however, courts have construed purported wills before admitting them to probate. For example, it may be necessary or appropriate to construe a writing offered for probate to decide whether it is testamentary. *See Boyles v. Gresham*, 263 S.W.2d 935, 936 (Tex. 1954). Additionally, courts have construed disputed language in a purported will before its admission to probate when an interested party seeks a declaratory judgment, as the Contestants have done here. *See Estate of Rhoades*, 502 S.W.3d 406, 410-11, 415 (Tex. App.—Fort Worth 2016, pet. denied); *McClure v. JPMorgan Chase Bank*, 147 S.W.3d 648, 650 (Tex. App.—Fort Worth 2004, pet. denied) (granting summary judgment declaring effect of alleged holographic will as to whether it revoked a prior trust before admitting any will to probate); *Harkins v. Crews*, 907 S.W.2d 51, 55-57 (Tex. App.—San Antonio 1995, writ denied); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a).

In evaluating whether the handwritten document is testamentary because it does not transfer or devise any property, we apply well-known principles. When a

purported testamentary instrument contains no ambiguity, its construction is a question of law that we review de novo.  *See Hancock v. Krause*, 757 S.W.2d 117, 119 (Tex. App.—Houston [1st Dist.] 1988, no writ).   However, when a will is reasonably susceptible to more than one meaning, then it is ambiguous and its interpretation usually is a fact issue.  *El Paso Nat'l Bank v. Shriners Hosp. for Crippled Children*, 615 S.W.2d 184, 185 (Tex. 1981); *Alpert v. Riley*, 274 S.W.3d 277, 286 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (op. on reh'g).  Ambiguity is a legal question.  *See Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018) (per curiam).

We generally interpret the words of a will according to their plain, ordinary meaning unless the will shows that they are used in another sense.  *Stephens v. Beard*, 485 S.W.3d 914, 916 (Tex. 2016) (per curiam).  If the law affords a word a technical legal meaning, courts ordinarily presume the testator intended this technical usage unless the will indicates otherwise.  *Lacis v. Lacis*, 355 S.W.3d 727, 733 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd w.o.j.).  But informal language used by a layman who drafted a will without an attorney's aid will be interpreted liberally, rather than technically, to effectuate the drafter's intent.  *Welch v. Straach*, 531 S.W.2d 319, 321 (Tex. 1975).

## C.      Application

In *Boyles*, the Supreme Court of Texas considered the testamentary character of a handwritten document offered as a will.  *Boyles*, 263 S.W.2d at 936-37.  There, the testator wrote:

> this Letter is Written With the idea that Some thing might happen to me.  that I would be wiped out Suddenly if this Should Happen my business would be in awful shape no relatives, nobody to do a thing So, this is written to try to have my affairs wound up in a reasonable way in case of my Sudden Death.  Would Like to have all of my

affairs, Cash all assets including any Bank Balance turned over to Parties named below With out any Bond or any Court action that can be avoided.

they to wind up my affairs in any way they See fit.

U.C. Boyles Refrigeration Supply Co

Charlie Hill Superior Ice Co

Should these Gentlemen need a third man Would Suggest Walker. National Bank of Commerce

*Id.* at 936.

After the testator's death, U.C. Boyles applied to probate the instrument, which the district court refused. *Id.* The district court and the court of appeals that affirmed the lower court's decision both held that the written instrument was not a will because it did not make a testamentary disposition of property. *Id.* Construing the document to determine whether it was testamentary in nature, the high court agreed that the document did not dispose of any property because the instrument "goes no further than to provide that it be turned over to U.C. Boyles and Charlie Hill, without bond or court action 'to wind up [the testator's] affairs.'" *Id.* The court thus "construe[d] the writing as one that names or appoints executors but does not purport to dispose of any property." *Id.* The dispositive question then was "whether such an instrument, when shown to have been executed as a will is required to be executed, may be probated." *Id.*

After reviewing treatises and relevant case law, the court disagreed with the lower courts' holdings that the instrument was not a will and ultimately concluded:

> [W]e follow the rule, established by the great weight of authority and well supported by reason, that an instrument of testamentary nature and properly executed is a will if it appoints an executor, and should be admitted to probate when the required proof is made, even though it makes no devise or bequest or no effective devise or bequest of the testator's property.

9

*Id.* at 939. The court distinguished cases that stated the test for determining testamentary character only in terms of whether the purported will disposed of property. *Id.* at 938. The rule's description was appropriate in those cases, which turned on whether the instruments at issue disposed of property, and is usually sufficient, "for most instruments purporting to be wills make disposition of the testator's estate." *Id.* The court continued, "[t]he definition is not all-inclusive, however, and it should not be taken to mean that an instrument properly executed as a will and which names or nominates an executor but does not purport to dispose of property cannot be admitted to probate as a will." *Id.*

In construing the purported will in *Boyles*, the court held as a matter of law that the instrument named or appointed executors but did not devise property. *Boyles*, 263 S.W.2d at 936. Here, for the reasons explained below, we construe the handwritten document as one that, like *Boyles*, names an executor but, unlike *Boyles*, is ambiguous as to whether it transfers or devises property.

As to the issue of property disposition, the Contestants argue that that the document merely grants Grenrood legal rights as the executor of Silverman's estate but does not bequeath any property rights. The Contestants contrast the dictionary definition for "legal right," which is a right created or recognized by law or a court and "[t]he capacity of asserting a legally recognized claim against one with a correlative duty to act," with the definition for "property right," which is the "right to specific property, whether tangible or intangible." *Compare* "Legal Right," Black's Law Dictionary (10th ed. 2014), *with* "Property Right," Black's Law Dictionary (10th ed. 2014). Under these definitions, say the Contestants, Grenrood has the rights and powers of an executor but has been devised no ownership rights to any of Silverman's property. The Contestants also point to case law, in which courts have held that language authorizing an administrator to "dispose[] of

10

[property] as they see fit," *Preston v. Preston*, 617 S.W.2d 841, 842 (Tex. App.— Amarillo 1981, writ ref'd n.r.e.), or to "control all property . . . as he may deem best and proper," *Ray v. Fowler*, 144 S.W.2d 665, 669 (Tex. App.—El Paso 1940, writ dism'd, judgm't corr.), does not bequeath any property under a purported will.

Grenrood, on the other hand, argues that the phrase "Karen Grenrood . . . has all legal rights to my estate in the case of my untimely or timely death" is an effective devise of all of Silverman's property. Grenrood likens the phrasing in Silverman's document to "Everything is yours Darling," which the court in *Hinson* stated could effectively devise a decedent's property. *Hinson*, 280 S.W.2d at 734.

We conclude that both sides' interpretations are reasonable, even presuming it is appropriate to consider the extrinsic evidence presented in the record. Although "legal rights" may have a technical legal usage in certain circumstances, we are unaware of any authority positing that "legal rights" in an alleged testamentary instrument means *only* rights as an estate's personal representative or, instead, rights to bequeathed property. We are hesitant to attribute to the term any technical legal meaning in a probate law sense given that the document in question is handwritten by a layman. *See Welch*, 531 S.W.2d at 321. We think that "legal rights," as used in Silverman's document, is reasonably susceptible to more than one meaning and is therefore ambiguous. The present writing would be more like the one at issue in *Boyles* and supportive of the Contestants' position if it contained language such as "Karen Grenrood is my executor, administrator, and has all legal rights to my estate in the case of my untimely or timely death, *to wind up my affairs in any way she sees fit*." (Emphasis added). But whether the handwritten document does or does not dispose of Silverman's property is a matter for the factfinder to decide. If the document disposes of property then it may be admitted to probate, presuming other testamentary characteristics exist.

11

Moreover, *Boyles* also held that an instrument, otherwise of testamentary nature and properly executed, should be admitted to probate as a will if it appoints an executor even if it does not devise or bequest any property. *Boyles*, 263 S.W.2d at 939. The supreme court has not overruled *Boyles*, and no court has disapproved it in the sixty-five years since its issuance. At least two intermediate courts of appeals have expressly re-stated its holding in this regard. *See Johnson v. Hewitt*, 539 S.W.2d 239, 241-42 (Tex. App.—Houston [1st Dist.] 1976, no writ); *Poole v. Starke*, 324 S.W.2d 234, 237 (Tex. App.—Fort Worth 1959, writ ref'd n.r.e.) ("A purported will is not entitled to probate where it neither disposes of property *nor appoints an executor*.") (emphasis added). Our court has never addressed the question, but we do so now and follow *Boyles*.

This jurisprudential authority finds consistency in the Texas Estates Code, which defines a "will" to include "a testamentary instrument that merely . . . appoints an executor . . . ." Tex. Est. Code § 22.034(2)(A).[5] Thus, a testamentary instrument that merely appoints an executor to act as the personal representative of a testator's estate upon the testator's death is, by statutory definition, a will. *Id.*

We view the instrument at issue here—naming and appointing Grenrood as Silverman's "executor [or] administrator"—as materially indistinguishable from the part of the instrument in *Boyles* that effectively appointed Boyles and Hill as executors of the decedent's estate. The Contestants do not dispute that the handwritten document appoints an executor. Assuming the handwritten document does not transfer or attempt to transfer property, it appoints an executor and for that

---

[5] Section 22.034 is, in relevant respects, identical to its predecessor. The legislative act that established and adopted a probate code included the following definition: "'Will' includes codicil; it also includes a testamentary instrument which merely appoints an executor or guardian, and a testamentary instrument which merely revokes another will." *See* Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 3(ff), 1955 Tex. Gen. Laws 88, 91 (formerly codified as Tex. Prob. Code § 3(ff), currently codified as Tex. Est. Code § 22.034).

reason may be admitted to probate presuming other necessary testamentary characteristics exist. *See Boyles*, 263 S.W.2d at 938; *see also Johnson*, 539 S.W.2d at 241-42 (despite alleged ineffectiveness of a conditional devise, court of appeals held that instrument was a will and should be admitted to probate, because at a minimum it named an executor).

For this reason, we reject the Contestants' argument that the handwritten document lacks testamentary intent because it does not dispose of any of Silverman's property. The Contestants cite, among other cases, *Preston v. Preston*, 617 S.W.2d 841, 844 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.), for the proposition that "[i]n the absence of expressed language evidencing a testamentary disposition, a writing is not a will for the purpose of disposing of property." But *Preston* is inapposite because, in addition to the aforementioned reasons, the will in *Preston* had been admitted to probate, and the court of appeals was tasked with determining whether the will lawfully disposed of the testator's property or whether, instead, the testator died intestate. *Id.* at 842-43. *Preston* and the related cases cited by the Contestants do not support their contention that a purported will must dispose of property to be admitted to probate. In fact, the court of appeals affirmed the trial court's ruling that "the instrument in question is effective as a will for the sole and only purpose of appointing Tom R. Preston and Mattie Price as executors of the estate of Dora Diggs." *Id.* at 843, 844. Thus, *Preston* is consistent with *Boyles*, which expressly holds that a document appointing an executor can be of testamentary character even if it devises or bequests no property. *Boyles*, 263 S.W.2d at 939; *see also* Tex. Est. Code § 22.034(2)(A).

In sum, we hold that the probate court erred by denying the handwritten document admission to probate on the ground that it lacks testamentary intent

because it does not transfer or dispose of property. We reach this conclusion for two reasons: (1) the document is ambiguous whether it disposes of property; and (2) presuming it does not dispose of property, it names or appoints an executor, as the parties agree.

## Conclusion

We deny the motion to dismiss the appeal. We reverse the judgment because the Contestants failed to meet their burden of proving as a matter of law that the handwritten document lacks testamentary intent for the reasons stated in their amended summary judgment motion. We also reverse the probate court's order declaring heirship, which was predicated on the erroneous summary judgment.[6] We cannot render judgment that the handwritten document be admitted to probate, however, as the Contestants raised at least one additional challenge, regarding undue influence, to its validity. We remand the cause to the probate court for further proceedings consistent with this opinion.


/s/    Kevin Jewell
       Justice


Panel consists of Justices Christopher, Jewell, and Bourliot.

---

[6] *See, e.g.*, *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 281 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) ("As the entire trial proceedings were premised on erroneous summary judgment orders, the more prudent course of action is to restore the parties to the status quo at the time of the summary judgment rulings and begin anew."); *Union Pac. R.R. Co. v. Seber*, 477 S.W.3d 424, 434 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (reversing court's final judgment based on erroneous earlier summary judgment).