# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00451-CV

---

**Dennis Schilling, Appellant**

**v.**

**Megan Kilburn, Appellee**

---

### FROM THE 424TH DISTRICT COURT OF LLANO COUNTY
### NO. 22061, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Dennis Schilling filed an application to probate what he contends is the will of decedent Steven Ray Kilburn, which purported to give all of Steven's property to Dennis, the brother of Steven's ex-wife Cynthia Schilling.[1] Appellee Megan Kilburn, Steven's daughter, filed a no-evidence motion for summary judgment, arguing that there was no evidence of Steven's testamentary intent so as to make the document a valid will. The district court granted Megan's motion. In a single issue on appeal, Dennis argues that the district court erred in granting summary judgment because there was some evidence of Steven's testamentary intent both in the language of the document and the circumstances surrounding its creation. We will reverse the district court's order and remand for further proceedings.

---

[1] Because multiple people in this case share the same surname, we will refer to the Schillings and the Kilburns using their first names.

# BACKGROUND[2]

Steven and Cynthia married in 2003 and were married for fifteen years. Steven had two children from a previous relationship, his daughter Megan and his son Remington, both of whom lived in the Austin area. According to Cynthia,

> Megan and Remington would rarely visit. Remington was in prison at one time. When they would visit, they frequently asked for money. They also called to ask for money. Sometimes Steve would give them money. Other times, Steve would hire them to do something for our business but neither Megan nor Remington were reliable and when they would stop showing up Steve would stop paying them.

In 2016, Cynthia suffered three strokes and was diagnosed with cancer. Cynthia explained that her health problems created difficulties in her marriage and that she and Steven eventually divorced as a result. However, Steven and Cynthia remained close friends and continued to live together. Cynthia averred that "Steven mentioned a few times that he did not want his children to receive an inheritance from him because they would waste it and he wanted the money to go for my caregiving needs. He discussed leaving his estate to my brother Dennis, so my brother could take care of me."

On November 7, 2021, Steven began experiencing chest pains. He told Cynthia that he had previously had a heart attack and believed that he was having another. Steven called Megan and asked for her help because she lived nearby, but Megan told her father that she could not help him. Steven then called his friends Alan and Angela Vassar and asked them to drive him to the hospital, as he did not want to use an ambulance. They agreed. Steven and Cynthia

---

[2] The following factual summary is taken from affidavits that Dennis attached to his response to Megan's no-evidence motion for summary judgment. The affidavits were from Cynthia and from Steven's friends Alan and Angela Vassar.

also called Dennis and asked if he could come and care for Cynthia in case Steven had to stay at the hospital. Dennis agreed.

At some point while Steven and Cynthia were waiting for the Vassars to arrive, Steven wrote on a yellow legal pad, "all property is to go to Denny Schilling." The document contained the following:



Nothing else was written on the document.

Cynthia, Alan, and Angela each averred that Steven showed them the document and discussed with them that he wanted his property to go to Dennis. Cynthia averred that while they were waiting for the Vassars to arrive, "Steve continued discussing what he wanted to happen with his estate if he should die before me. He said that he thought it best to leave his estate to my brother, Dennis Schilling, so that there would be someone to care for me." Alan attested that during the drive to the hospital, Steven "mentioned that he might die and wanted his former brother-in-law, 'Denny,' to receive his property because he knew that Denny would take care of his wife, Cindy." Angela recounted that before they went to the hospital, Steven "stated that he wanted everything to go to his former brother-in-law Dennis Schilling, Cindy's brother, so that he could take care of Cindy, the decedent's ex-wife." Angela further stated that "[d]uring

3

the entire drive to the hospital he discussed with me and my husband that he wanted Dennis Schilling to receive his estate so that he could take care of Cindy. He repeated this three to five times."

Steven checked into the hospital that night and left two days later against medical advice. He died shortly thereafter, on November 10, 2021.

Megan later filed an application for letters of independent administration and to determine heirship, representing that Steven had died intestate. Dennis filed an objection to the application, representing that Steven had executed a valid will before his death and asking that it be admitted to probate. Megan contested the will and later filed a motion for partial summary judgment, asserting that there was no evidence that Steven had executed the document with testamentary intent. Following a hearing, the district court took the matter under advisement and later granted the motion.[3] This appeal followed.

## STANDARD OF REVIEW

"We review an order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). A party may obtain a no-evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at

---

[3] After Megan filed her motion, Dennis filed a traditional motion for summary judgment, asserting that the document satisfied all the requirements of a valid will. However, at the hearing on Megan's motion, the district court announced that due to apparent confusion with Dennis's filing in the district clerk's office, it would treat Dennis's motion as a response to Megan's motion rather than a competing motion. Neither party objected to this procedure. Thus, only Megan's motion was before the district court at the time of its ruling.

trial." Tex. R. Civ. P. 166a(i). "A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders, L.L.C.*, 622 S.W.3d at 864.

"A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). "Accordingly, we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences." *Id.* at 751. "[A] no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Id.* (first citing Tex. R. Civ. P. 166a(i) and then citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion'" of a fact. *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

**GOVERNING LAW**

In a proceeding to admit a will to probate, the proponent carries the initial burden to prove that a document is a valid will. *In re Estate of Danford*, 550 S.W.3d 275, 281 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Cason v. Taylor*, 51 S.W.3d 397, 405 (Tex. App.—Waco 2001, no pet.); *see Austin v. Austin*, No. 03-18-00678-CV, 2019 WL 4309569, at *2 (Tex.

5

App.—Austin Sept. 12, 2019, no pet.) (mem. op.).  Among other requirements, the proponent must establish that the decedent created the document with testamentary intent.  *Hinson v. Hinson*, 280 S.W.2d 731, 733 (Tex. 1955); *In re Estate of Hendler*, 316 S.W.3d 703, 708 (Tex. App.—Dallas 2010, no pet.); *Cason*, 51 S.W.3d at 405.  "Testamentary intent is the intent to create a revocable disposition of property that will take effect after death."  *Hendler*, 316 S.W.3d at 708 (citing *Hinson*, 280 S.W.2d at 733).  The focus is on the drafter's intent rather than the specific words used in the document:

> The animus testandi does not depend upon the maker's realization that he is making a will, or upon his designation of the instrument as a will, but upon his intention to create a revocable disposition of his property to take effect after his death.  It is essential, however, that the maker shall have intended to express his testamentary wishes in the particular instrument offered for probate.

*Hinson*, 280 S.W.2d at 733.  Additionally, "informal language used by a layman who drafted a will without an attorney's aid will be interpreted liberally, rather than technically, to effectuate the drafter's intent."  *In re Estate of Silverman*, 579 S.W.3d 732, 738 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

"A court's first duty in a proceeding to admit a writing offered for probate is to determine whether the writing is testamentary in character."  *Silverman*, 579 S.W.3d at 736 (citing *Langehennig v. Hohmann*, 163 S.W.2d 402, 405 (Tex. 1942)).  "If the document is not of testamentary character it is not a will and cannot be admitted to probate."  *Id.*  "Generally, to be testamentary in character, a writing must possess certain essential characteristics," including that it "must operate to transfer, convey, or dispose of the testator's property upon death."  *Id.*

In some cases, testamentary intent (or the lack thereof) can be conclusively established as a matter of law from the document itself.  *See Hinson*, 280 S.W.2d at 733–34

6

(concluding that decedent's handwritten note on hotel stationary was not valid codicil because note "conveys the idea that [decedent] has something in mind other than the making of a testamentary disposition of his property"; note discussed several matters other than property disposition, did not "contain language ordinarily used to make a disposition of property," and expressly stated that previously written will "still stands as is").

However, in other cases, the document itself is ambiguous, i.e., reasonably susceptible to more than one meaning, and extrinsic evidence may be considered to determine whether the drafter created the document with testamentary intent. *See Silverman*, 579 S.W.3d at 738; *Cason*, 51 S.W.3d at 405; *Ayala v. Martinez*, 883 S.W.2d 270, 272 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied). In such cases, "[w]here the evidence is not conclusive of the existence or nonexistence of such an intention, and where its existence or nonexistence is to be deduced from all the facts and circumstances of the case, the issue must be determined by the jury" or the trial court acting in its role as factfinder. *Brackenridge v. Roberts*, 267 S.W. 244, 246 (Tex. 1924) (concluding that "[u]nder the facts and circumstances of the preparation of the writing," there was "a question of fact, an important issue of fact to be determined by the jury, as to whether such writing was intended to be and was [decedent's] last will, and to have effect as such, and to effect a revocation of his prior will" or was "a mere penciled memorandum, concerning which he was to deliberate and finally use or reject, in case he should decide to write a new will").

**DISCUSSION**

Megan argues that there is no evidence of Steven's testamentary intent within the document itself and that, consequently, extrinsic evidence cannot be considered to determine

Steven's intent. Specifically, she asserts that the document does not contain evidence that Steven intended the transfer of property to take place upon his death and that at most, it shows an intent to transfer the property during Steven's lifetime. She further asserts that the additional words contained in the document, "insurance – Cook Waldin," indicate that Steven intended the document to be a "to-do list" rather than a will.

We disagree that the document contains no evidence of testamentary intent. The document recites that "all property is to go to Denny Schilling." Although the document does not expressly state that Steven intended the property to pass "upon his death," it contains two phrases that would support a finding that Steven intended that result. First, the phrase "all property" often appears in testamentary documents to indicate that the testator intended the complete disposition of his estate upon death. *See, e.g.*, *Odom v. Coleman*, 615 S.W.3d 613, 619, 627-28 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Doggett v. Robinson*, 345 S.W.3d 94, 97 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Ford v. Allen*, 526 S.W.2d 643, 645 (Tex. App.—Austin 1975, no writ); *Killough v. Shafer*, 358 S.W.2d 748, 749 (Tex. App.—Fort Worth 1962, writ ref'd n.r.e.). Second, the phrase "is to go to" indicates that Steven intended the transfer of property to occur at some point in the future, which could have meant upon his death. *See In re Estate of Brown*, 507 S.W.2d 801, 805 (Tex. App.—Dallas 1974, writ ref'd n.r.e.) (observing that "words 'goes to' have been held to indicate testamentary intent, i.e., 'to give property upon death'" (citing *In re Dromgoole's Estate*, 127 S.W.2d 977, 978 (Tex. App.—San Antonio 1939, no writ))). As for the additional words in the document mentioning insurance and "Cook Waldin," their mere presence in the document does not conclusively negate Steven's testamentary intent. At most, the words create a fact issue regarding the testamentary nature of the document. We conclude that the document itself is ambiguous regarding testamentary intent

8

and that, accordingly, extrinsic evidence may be considered to resolve the ambiguity. *See Silverman*, 579 S.W.3d at 739-41; *Cason*, 51 S.W.3d at 405; *Ayala*, 883 S.W.2d at 272.

We conclude that Dennis presented more than a scintilla of evidence that Steven created the document with testamentary intent. Accordingly, the district court erred in granting Megan's no-evidence motion for summary judgment.

We sustain Dennis's sole issue.

## CONCLUSION

We reverse the district court's judgment and remand for further proceedings consistent with this opinion.

_____

Gisela D. Triana, Justice

Before Justices Triana, Crump, and Ellis

Reversed and Remanded

Filed: July 3, 2025

9